I. NEEL CHATTERJEE (State Bar No. 173985)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:   650-614-7400
Facsimile:   650-614-7401

JAMES N. KRAMER (State Bar No. 154709)
CHRISTIAN N. BROWN (State Bar No. 233147)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   415-773-5700
Facsimile:   415-773-5759

Attorneys for Plaintiff
DUKE ADVANTAGE, LLC

*M. Huerta*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| DUKE ADVANTAGE, LLC, a company,<br><br>Plaintiff,<br><br>v.<br><br>CORMATRIX CARDIOVASCULAR, INC., a corporation, ROBERT G. MATHENY, an individual, DAVID B. CAMP, an individual, and BEECHER LEWIS, an individual,<br><br>Defendants. | CASE NO. 107CV085326<br><br>COMPLAINT FOR:<br><br>(1) BREACH OF FIDUCIARY DUTY<br><br>(2) FRAUDULENT INDUCEMENT<br><br>(3) BREACH OF CONTRACT<br><br>(4) ACCOUNTING<br><br>(5) INSPECTION |

OHS West:260222289.3

COMPLAINT

1    Plaintiff Duke Advantage, LLC ("Duke Advantage") alleges as follows:

2    **SUMMARY OF THE ACTION**

3    1.    This matter involves a breach of contract, breaches of fiduciary duties, and a false promise made by the Defendants in order to induce the Plaintiff Duke Advantage to make a sizeable investment in their company. While negotiating for Duke Advantage's $350,000 investment in Defendant CorMatrix Cardiovascular, Inc. ("CorMatrix"), CorMatrix's founding executive represented and ultimately agreed that Duke Advantage would not merely be a passive investor, but would have a meaningful role in guiding the company, and its member Robert LaDuca ("LaDuca") would be given a seat on CorMatrix's board of directors. Those promises were false, and were made with the intention of inducing Duke Advantage to invest in CorMatrix.

2.    The promises of a board seat and an active role in directing the company's strategy and operations were important to Duke Advantage's decision to invest in CorMatrix. Without some role in overseeing the company's strategy and operations, Duke Advantage would not have been comfortable investing $350,00 in a business operated by individuals with limited or no experience managing an early-stage biotechnology company. Relying on the Defendants' false promises that Duke Advantage would be given such a role and that LaDuca would be made a bona fide board member, Duke Advantage proceeded with its investment, providing CorMatrix with funds the company desperately needed to continue its operations.

3.    The Defendants, however, breached their agreement to allow Duke Advantage an active role in CorMatrix, and they failed to ever treat LaDuca as an actual member of the company's board. While they initially took steps to make it appear that LaDuca would become a board member, LaDuca was never in fact given the rights of a bona fide board member. The Defendants consistently failed to act on Duke Advantage's suggestions and didn't allow Duke Advantage the type of input or say in CorMatrix's activities that Duke Advantage had bargained for when negotiating its investment. Desperate for cash at the time negotiations took place, the Defendants made promises they had no intention to keep simply to obtain needed capital. In failing to abide those promises, Defendants misled and breached their agreement with Duke Advantage.

OHS West:260222289.3

4. Defendants similarly breached fiduciary and other duties to Duke Advantage through their actions, and by denying Duke Advantage access to the companies' books and records despite repeated requests.

## THE PARTIES

5. Plaintiff Duke Advantage is a limited liability company. Duke Advantage currently holds approximately 805,152 split-adjusted shares in CorMatrix. LaDuca is a member of Duke Advantage.

6. Defendant CorMatrix is a Georgia corporation. CorMatrix's website identifies its only business address as 155 Moffett Park Drive, Suite A-240, Sunnyvale, CA 94089. On information and belief, this address is CorMatrix's principal place of business.

7. Defendant Robert G. Matheny, M.D. ("Matheny") is an individual. Matheny is the Chief Medical Officer of CorMatrix, and a member of CorMatrix's board of directors. On information and belief, Matheny is a resident of the State of Georgia

8. Defendant David B. Camp ("Camp") is an individual. Camp is the Chief Executive Officer of CorMatrix, and a member of CorMatrix's board of directors. On information and belief, Camp is a resident of the State of Georgia.

9. Defendant Beecher Lewis ("Lewis") is an individual. Lewis is the President and Chief Operating Officer of CorMatrix, and a member of CorMatrix's board of directors. On information and belief, Lewis is a resident of the State of Florida.

10. Matheny, Camp and Lewis are the highest-ranking officers of CorMatrix, make up a majority of the company's board of directors, and hold a controlling share of the company's stock. Through their effective control and dominance over CorMatrix's activities, Matheny, Camp and Lewis have used CorMatrix to perpetrate the actions complained of herein. By failing to observe the separate legal existence of CorMatrix and by causing CorMatrix to take the actions described herein, Matheny, Camp and Lewis are individually liable for CorMatrix's wrongful acts.

## JURISDICTION & VENUE

11. Defendant CorMatrix transacts business within the State of California and engaged in business within this state with Duke Advantage, giving rise to the present controversy between the parties. CorMatrix maintains an office in Sunnyvale, California. This court has jurisdiction over the subject matter of this action pursuant to California Code of Civil Procedure Section 410.10.

12. Defendants have taken actions causing injury within the State of California, which injuries were proximately caused by actions taken both within and outside the State of California.

13. Venue in this Court is proper under California Code of Civil Procedure Section 395 and 395.5.

## FACTUAL BACKGROUND

14. CorMatrix is a corporation which claims to develop and market products incorporating extracellular matrix ("ECM") materials for use in myocardial and pericardial repair applications.

15. LaDuca, a member of Duke Advantage, is an inventor. He is listed as an inventor on 8 issued patents and has filed additional patent applications related to medical stents, stent grafts and other medical devices.

16. LaDuca heard of CorMatrix in 2003, and learned that CorMatrix was involved in developing ECM. In June of 2003, LaDuca had a meeting in San Francisco with Matheny, the purported founder of CorMatrix, to discuss issues including the possibility of using ECM in conjunction with stent grafts.

17. In approximately November of 2003 a potential investor in CorMatrix refrained from investing in the company, citing concerns about CorMatrix's intellectual property position. Following the potential investor's decision, CorMatrix was in danger of being unable to make a required payment to Purdue Research Foundation ("Purdue") pursuant to a licensing agreement between the parties. Missing the payment would have resulted in CorMatrix losing its rights to use ECM under its license from Purdue Research Foundation. Without that license, CorMatrix would likely have been out of business.

OHS West:260222289.3                           - 3 -
                                            COMPLAINT

18. In February of 2004, LaDuca and Matheny began discussing the possibility of LaDuca investing in CorMatrix. The negotiations were thorough and conducted over the telephone, with LaDuca taking part from his attorney's office in Campbell, California. LaDuca explained that any investment would be made by Duke Advantage, a limited liability company of which LaDuca would be a member.

19. During the negotiations, LaDuca discussed the fact that Duke Advantage was not interested in being a passive investor. Matheny and LaDuca agreed that were Duke Advantage to invest, it would play an active role in CorMatrix, helping guide the company's strategies and future product development.

20. On or around February 8th, 2004, LaDuca definitively told Matheny that Duke Advantage would require an active role in the company and board representation if it were going to invest a sum as large as $350,000. Matheny in turn promised and agreed that Duke Advantage would be able to play a meaningful role in guiding the company's strategy and operations and that LaDuca would be appointed to the company's board of directors.

21. It was clear to both parties and agreed that in return for its sizeable investment, Duke Advantage would be given an active role in CorMatrix and that LaDuca would be given a seat on CorMatrix's board of directors.

22. In fact, Defendants had no intention of following through on these promises and agreements, and made them with the intent of inducing Duke Advantage to invest. Despite this lack of intention, Defendants nevertheless agreed to these terms, creating a legally binding contract between the parties.

23. Defendants' promises and agreement to provide a strategic role with the company and a seat on CorMatrix's board of directors were important to Duke Advantage's decision to invest, as they would provide Duke Advantage with means to oversee and safeguard its investment. Duke Advantage reasonably relied on these promises in making its investment decision.

24. On February 9, 2004, Duke Advantage agreed to make its investment. Duke Advantage executed the written portion of the parties' agreement, a stock subscription agreement

OHS West:260222289.3

- 4 -

COMPLAINT

drawn up by the Defendants, at the offices of its counsel in Campbell, California. Duke Advantage wired $300,000 to Defendants on February 10, 2004. This payment was followed shortly thereafter by an additional $50,000. Duke Advantage was provided 25,161 shares of CorMatrix common stock, at that time accounting for a 20 percent ownership stake. After a stock split, Duke Advantage currently holds approximately 805,152 shares of CorMatrix common stock.

25. Duke Advantage's sizeable investment allowed CorMatrix to pay fees owed under a license agreement with Purdue Research Foundation, which license was critical to CorMatrix's operations. After receiving $350,000 from Duke Advantage, however, Defendants failed to live up to the terms of the parties' agreement related to the promised seat on CorMatrix's board of directors and Duke Advantage's ability to play an active role in the company. CorMatrix initially took steps indicating that it would follow through on the board seat, sending LaDuca a consent form to be signed by all CorMatrix shareholders that purported to set the company's board at five members, including LaDuca, and provided for a stock split. LaDuca signed and returned this shareholder consent form to CorMatrix, but never received a countersigned, effected copy in return.

26. Defendants also initially consulted with LaDuca for a period following Duke Advantage's investment, with LaDuca participating in regular conference calls to submit ideas and discuss strategy.

27. Over time, however, LaDuca noticed that his input and suggestions were being ignored. When he would inquire into operational issues he felt were important to the well being of the company, Defendants failed to respond or provide requested information. For example, LaDuca's inquiries into the status of a license CorMatrix had obtained from ACell Inc., a company that had become involved in a patent infringement lawsuit related to the license CorMatrix held, were ignored. LaDuca also inquired into whether CorMatrix had obtained a written extension on a license payment owed to Purdue Research Foundation, and whether CorMatrix was current on all outstanding loans and obligations (some of which were collateralized with CorMatrix's license from Purdue Research Foundation), but was not provided

with satisfactory answers. Denied access to such information, Duke Advantage had no way of overseeing or safeguarding its investment, as it had bargained for when agreeing to invest.

28. Defendants also failed to provide LaDuca with any notice or information about potential board meetings and decisions. On the contrary, Defendants froze LaDuca out of decisions that required board approval. For instance, Defendants issued stock to new investors on a number of occasions following Duke Advantage's investment, without consulting LaDuca or providing him with related information or records.

29. In or around June of 2005, a decision was made to hire an investment banker named Jim Millar to help raise capital for CorMatrix. Millar was offered equity in CorMatrix in addition to an already generous compensation package. LaDuca objected to Millar's hiring and expressly protested the decision to grant Millar equity in CorMatrix. Defendants Matheny, Camp and Lewis ignored and never responded to LaDuca's concerns, and proceeded to hire Millar and grant him equity in the company over LaDuca's objection. On information and belief, Defendants held a meeting concerning Millar's equity grant without providing notice to LaDuca, and without LaDuca present, in order to approve of the action.

30. After the equity grant to Millar, LaDuca made requests to view CorMatrix's books and records, but was rebuffed in his attempts by Defendants Matheny, Camp and Lewis, who claimed that the records were confidential. Upon receiving these requests, Lewis, for example, would seek to pacify LaDuca by telling him that his "phone was always open" and that he would be happy to fill LaDuca in on the details. LaDuca, however, was not content with telephone calls. LaDuca wanted to inspect the company's records because he was aware that shares of CorMatrix stock were being issued without his knowledge of the terms or conditions, despite his purported status as a member of the company's board of directors.

31. When LaDuca would raise these issues with Defendants, he would be met with assurances and promises that while records were "confidential," he was free to discuss matters and information with Defendants at any time. LaDuca felt that Defendants were subjecting him to a "sales job" in order to keep him pacified, but he refrained from escalating the situation out of fear of being further marginalized and with the hope that Defendants' performance of the parties'

1. agreement would improve.

32. By June of 2006, things had progressed to the point that LaDuca was no longer being given any say or opportunity to be heard in connection with CorMatrix's strategy and operations. At that time, CorMatrix's executives decided to move the company out of office space it had rented from a company LaDuca owns in Santa Cruz, California. LaDuca's company, Duke Empirical, Inc., designs, develops and manufactures medical devices and products on a contract basis for clients. CorMatrix had moved into the Santa Cruz space based on the idea that CorMatrix would eventually contract with Duke Empirical for the development and manufacture of its own products. Achieving progress towards such a manufacturing operation was required by the terms of CorMatrix's license agreement with Purdue Research Foundation. It was useful in demonstrating progress on that front for the company to set up operations in the same facility as Duke Empirical and its established manufacturing operation. Failure to achieve progress towards a manufacturing operation jeopardized CorMatrix (and Duke Advantage's investment in it) as the loss of the license from Purdue Research Foundation would have prevented CorMatrix from pursuing its plan to develop and market ECM-related products. Despite this, CorMatrix made the decision to move out of the Santa Cruz office space, in effect taking a step backwards from the establishment of a manufacturing operation. LaDuca was alarmed that the move could be perceived by Purdue Research Foundation as indicating a lack of progress, potentially putting Duke Advantage's investment at risk.

33. In or around October of 2006, LaDuca again asked to be provided with records regarding the solicitation of new investors and the issuance of new shares in CorMatrix. LaDuca wanted to see these records in order to assure that Duke Advantage and other shareholders were not having their investments improperly diluted. His request was ignored.

34. Duke Advantage also expected to be provided with salary information for Matheny when Matheny commenced full-time employment as the Chief Medical Officer of CorMatrix. To date, Duke Advantage has no knowledge of the salaries Defendants Camp, Matheny and Lewis are being paid by CorMatrix.

35. By November of 2006, despite Defendants' attempts to pacify Duke Advantage, it

OHS West:260222289.3                      - 7 -
COMPLAINT

was sufficiently clear that Defendants' promises of a bona fide board seat and active role in CorMatrix had been false, and that Defendants had breached the parties' agreement. At a shareholder's meeting held that month, LaDuca approached CorMatrix's secretary and treasurer John Thomas and General Counsel Blaine Crutchfield to show them the shareholder consent form he was sent following Duke Advantage's investment, that purported to appoint LaDuca to the board of directors. Thomas and Crutchfield disavowed any knowledge of the form or any action to appoint LaDuca a member of the CorMatrix board of directors.

36. Duke Advantage has been harmed by the Defendants' actions by virtue of the fact that it bargained for and was induced into investing $350,000 with the promise that it would be granted a board seat and an active role in CorMatrix that enabled it to monitor and safeguard its investment, only to find that it had no such ability and its member was never given the rights or treatment due a bona fide member of the company's board.

## CAUSES OF ACTION

### First Cause of Action

### (Beach of Fiduciary Duty Against All Defendants)

37. Duke Advantage incorporates by reference all of the allegations contained in paragraphs 1 through 36, inclusive, of this Complaint.

38. Defendants Matheny, Camp and Lewis, as majority shareholders, directors and officers of CorMatrix, stand in a fiduciary position to Duke Advantage and owe Duke Advantage the duty of care, duty of loyalty, duty of candor, duty of full disclosure and duty of good faith and fair dealing. Defendants may not abuse their positions of power and authority to the detriment of Duke Advantage as a minority shareholder.

39. Defendants have utilized their positions as majority shareholders, directors and officers to deny Duke Advantage a seat on CorMatrix's Board of Directors, to prevent Duke Advantage from having any role in the direction of the company; and to rebuff Duke Advantage's requests to view books and records of the company.

40. Plaintiff Duke Advantage has suffered and will continue to suffer injury as a direct and proximate result of the actions and inactions of Defendants.

41. Plaintiff Duke Advantage is entitled to a direct recovery of damages because Plaintiff is the only shareholder injured by the actions described above, and no other parties are in need of protection by the Court in connection with Defendants' described actions.

42. Defendants are further liable for the costs and expenses of this action.

### Second Cause of Action

### (Fraudulent Inducement Against All Defendants)

43. Plaintiff Duke Advantage incorporates by reference all of the allegations contained in paragraphs 1 through 36, inclusive, of this Complaint.

44. Defendants promised Duke Advantage that it would be given an active role with the company and a seat on the board of directors of CorMatrix in connection with its investment. Defendants' promises were important to Duke Advantage's decision to invest in CorMatrix.

45. On information and belief, Defendants in fact had no intention to provide Duke Advantage with an active role in guiding the company's strategies and operations or a bona fide seat on CorMatrix's board; these promises were false at the time they were made.

46. Defendants made these false promises with the intention that Duke Advantage rely upon them in making its decision to invest. Duke Advantage did in fact reasonably rely on Defendants' promises in deciding to invest $350,000 in CorMatrix.

47. CorMatrix failed to follow through on its promises to Duke Advantage.

48. Duke Advantage has been damaged as a result of relying on Defendants' false promises in an amount to determined at trial.

### Third Cause of Action

### (Breach of Contract Against All Defendants)

49. Plaintiff Duke Advantage incorporates by reference all of the allegations contained in paragraphs 1 through 36, inclusive, of this Complaint.

50. Duke Advantage and Defendants entered into a valid and enforceable contract under which Duke Advantage would provide consideration of $350,000 to Defendants in exchange for a 20 percent share in CorMatrix, a seat on CorMatrix's board of directors, and an active role in guiding the strategy and operations of CorMatrix. The portion of the agreement

OHS West:260222289.3

- 9 -

COMPLAINT

related to Duke Advantage's board seat and active role in the company was oral in nature, clearly understood by both parties, agreed to at the same time as the written portion of the agreement, and supported by the same consideration.

51. Duke Advantage has fully performed all of its obligations under the contract.

52. Duke Advantage has not waived, released, or otherwise relinquished its rights under the contract.

53. Defendants breached the parties' contract by failing to provide Duke Advantage an active role in directing CorMatrix's strategy and operations and a bona fide seat on CorMatrix's board of directors.

54. As a direct and proximate result of Defendants' breach of contract, Plaintiff Duke Advantage has been damaged in an amount to be determined at trial.

### Fourth Cause of Action

### (Accounting Against Defendants Matheny, Camp and Lewis)

55. Plaintiff Duke Advantage incorporates by reference all of the allegations contained in paragraphs 1 through 36, inclusive, of this Complaint.

56. At all relevant times, Defendants Matheny, Camp and Lewis served as directors and officers of CorMatrix. In addition, through their majority ownership of the stock of CorMatrix, the Defendants have exercised substantial control over the operations of CorMatrix. As such, and as enumerated in the First Cause of Action, these Defendants owned, and continues to owe, a fiduciary duty that requires them to act in good faith and in the best interests of minority shareholder and Plaintiff Duke Advantage.

57. Defendants should be required to account to Plaintiff Duke Advantage for all personal financial transactions with CorMatrix, including, but not limited to, salary paid to Matheny, Camp and Lewis, all loans, advances, and other payments received, all distributions of money or property that were not shared proportionally with the Plaintiff Duke Advantage, and all joint or commingled investments with CorMatrix.

### Fifth Cause of Action

### (Inspection Against All Defendants)

58. Plaintiff Duke Advantage incorporates by reference all of the allegations contained in paragraphs 1 through 36, inclusive, of this Complaint.

59. Defendants have sought to deny Duke Advantage access to material financial and other information regarding the company.

60. Defendants are improperly preventing the Plaintiff Duke Advantage from reviewing the books and records of CorMatrix as it is authorized to do.

61. Defendants Matheny, Camp and Lewis have failed to provide, among other things, copies of the company's financial statements, capitalization tables, payroll reports, minutes of shareholder meetings and meetings of the board directors, and resolutions adopted by the shareholders or the board of directors.

62. Duke Advantage is entitled to a full review of the books and records of CorMatrix and has made several requests to review these records. Defendants Matheny, Camp and Lewis have refused to allow such review.

63. Duke Advantage is entitled to an order from the Court requiring Defendants Matheny, Camp and Lewis to make the books and records of CorMatrix available for review, inspection and copying.

### PRAYER FOR RELIEF

Plaintiff prays for the following relief:

1. For an order entering judgment against all Defendants on all Causes of Action;
2. For compensatory and special damages according to proof;
3. For an order requiring Defendants to provide an accounting as requested in the Fourth Cause of Action;
4. For an order allowing Duke Advantage to fully review, inspect and copy the books and records of CorMatrix as requested in the Fifth Cause of Action;
5. For an order directing Defendants to account for and pay to Duke Advantage all gains, profits and savings derived from their improper conduct;

6. For punitive damages pursuant to California Civil Code § 3294;

7. For costs and attorneys' fees incurred herein as permitted by law; and

8. For such other and further relief as the Court deems just and proper.

Dated: May 4, 2007

ORRICK, HERRINGTON & SUTCLIFFE LLP

_____
I. Neel Chatterjee
Attorneys for Plaintiff
DUKE ADVANTAGE, LLC

OHS West:260222289.3

- 12 -

COMPLAINT

ATTACHMENT A

**CIVIL LAWSUIT NOTICE**
Superior Court of California, County of Santa Clara
191 N. First St., San Jose, CA 95113

CASE NUMBER: 1 07CV085326

| READ THIS ENTIRE FORM |

_PLAINTIFFS_ (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the _Complaint, Summons_, an _Alternative Dispute Resolution (ADR) Information Sheet_, and a copy of this _Civil Lawsuit Notice_, and you must file written proof of such service.

> _DEFENDANTS_ (the person(s) being sued): You must do each of the following to protect your rights:
> 1. You must file a **written response** to the Complaint, in the clerk's office of the Court, within **30 days** of the date the _Summons_ and _Complaint_ were served on you;
> 2. You must send a copy of your written response to the plaintiff; and
> 3. You must attend the first Case Management Conference.
>
> Warning: If you do not do these three things, you may automatically lose this case.

_RULES AND FORMS_: You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: www.sccsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing, 49 N. First St., San Jose (408-293-8177)

For other local information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

_CASE MANAGEMENT CONFERENCE (CMC)_: You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a _Case Management Statement_ (Judicial Council form CM-110) at least 15 calendar days before the CMC. You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.

_Your Case Management Judge is:_ Kevin J Murphy                              DEPT: 22

_The first CMC is scheduled as follows:_ (Completed by Clerk of Court)
Date: **SEP 11 2007**  Time: 3:00 PM  Dept.: 22

_The next CMC is scheduled as follows:_ (Completed by party if the first CMC was continued or has passed)
Date: _____  Time: _____  Dept.: _____

_ALTERNATIVE DISPUTE RESOLUTION (ADR)_: If all parties have appeared and filed a completed _ADR Stipulation Form_ (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2156) for a list of ADR providers and their qualifications, services, and fees.

_WARNING_: Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

Form CV-5012
Rev. 1/01/04

CIVIL LAWSUIT NOTICE

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< Mediation is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

< Mediation may be appropriate when:
  < The parties want a non-adversary procedure
  < The parties have a continuing business or personal relationship
  < Communication problems are interfering with a resolution
  < There is an emotional element involved
  < The parties are interested in an injunction, consent decree, or other form of equitable relief

-over-

- Arbitration is a normally informal process in which the neutral (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties. The parties can agree to binding or non-binding arbitration. Binding arbitration is designed to give the parties a resolution of their dispute when they cannot agree by themselves or with a mediator. If the arbitration is non-binding, any party can reject the arbitrator's decision and request a trial.

    Arbitration may be appropriate when:
    - The action is for personal injury, property damage, or breach of contract
    - Only monetary damages are sought
    - Witness testimony, under oath, is desired
    - An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

- Neutral evaluation is an informal process in which a neutral party (the evaluator) reviews the case with counsel and gives a non-binding assessment of the strengths and weaknesses on each side and the likely outcome. The neutral can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

    Neutral evaluation may be appropriate when:
    - The parties are far apart in their view of the law or value of the case
    - The case involves a technical issue in which the evaluator has expertise
    - Case planning assistance would be helpful and would save legal fees and costs
    - The parties are interested in an injunction, consent decree, or other form of equitable relief

- Special masters and referees are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.

    Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

- Settlement conferences are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.

    Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; and sports, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, for information about ADR procedures, or for other questions about ADR?*

*Contact:*
Santa Clara County Superior Court          Santa Clara County DRPA Coordinator
ADR Administrator                          408-792-2704
408-882-2530

---

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION**

CV-5003 REV 5/06

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):
I. Neel Chatterjee (State Bar No. 173985)
Christian N. Brown (State Bar No. 233147)
Orrick, Herrington & Sutcliffe, LLP, 1000 Marsh Road, Menlo Park, CA 94025

TELEPHONE NO.: (650) 614-7400   FAX NO.: (650) 614-7401
ATTORNEY FOR (Name): Duke Advantage LLC

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS: SAME
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Santa Clara County, Downtown Branch

**CASE NAME:** Duke Advantage LLC v. CorMatrix Cardiovascular, Inc. et al.

FOR COURT USE ONLY

M. Huerta

**CASE NUMBER:** 107CV085326

| CIVIL CASE COVER SHEET | Complex Case Designation | |
|---|---|---|
| ☑ Unlimited  ☐ Limited | ☐ Counter  ☐ Joinder | |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) |

JUDGE:
DEPT:

Items 1-5 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Collections (09)
☐ Insurance coverage (18)
☑ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision
3. Type of remedies sought (check all that apply):
   a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): Five (5)
5. This case ☐ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:
I. Neel Chatterjee (Attorney for Plaintiffs)
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]

**CIVIL CASE COVER SHEET**

American LegalNet, Inc.
www.FormsWorkflow.com

Cal. Rules of Court, rules 3.220, 3.400-3.403;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

M. Huerta

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CorMatrix Cardiovascular, Inc., a corporation, Robert G. Matheny, an individual, David B. Camp, an individual, and Beecher Lewis, an individual.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Duke Advantage, LLC, a company.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, Santa Clara County
191 N. First Street
San Jose, California 95113

**CASE NUMBER:** 107CV085326
*(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Orrick, Herrington & Sutcliffe, LLP, 1000 Marsh Road, Menlo Park, CA 94025, (650) 614-7400
I. Neel Chatterjee

DATE: **MAY 04 2007**             KIRI TORRE, Clerk, by _____, Deputy
(Fecha)                            (Secretario)         M. Huerta    (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers**

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Complex Cases**

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice–Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief from Late Claim
  - Other Civil Petition