**EXHIBIT A**

**COPY**

**FILED IN OFFICE**

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

MAR 1 4 2007

Deputy Clerk Superior Court
Fulton County, Georgia

| | |
|---|---|
| CORMATRIX CARDIOVASCULAR, INC., | ) ) ) |
| Plaintiff, | ) ) CIVIL ACTION FILE ) NO. 2007CV130971 |
| v. | ) ) |
| ROBERT LADUCA and DUKE VASCULAR, INC., | ) ) ) |
| Defendants. | ) ) |

**COMPLAINT**

Plaintiff CorMatrix Cardiovascular, Inc. ("CorMatrix") respectfully shows the Court the following:

I.    PARTIES, JURISDICTION and VENUE

1. CorMatrix is a Georgia corporation having its principal place of business at 200 N. Cobb Parkway, Marietta, Cobb County, Georgia 30062.

2. Robert LaDuca is a resident of the State of California. LaDuca is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91 because he (i) transacts business within this State, (ii) has committed tortious acts or omissions within this State and (iii) has committed a tortious injury in this State caused by an act or omission outside of this State and regularly does or solicits business and engages in a persistent course of conduct in this State. Specifically, LaDuca was at all times relevant hereto an officer and/or director of CorMatrix, has been present in this State and has had contacts with this

US2000 9839418.2

EXHIBIT A

State on numerous occasions to conduct the business of CorMatrix. LaDuca may be served with process at 2829 Mission Street, Santa Cruz, California 95060.

3. Duke Vascular, Inc. ("Duke Vascular") is a Delaware corporation, having its principal place of business at 2207 Concord Pike #310, Wilmington, Delaware 19803-2908. Upon information and belief, LaDuca is the sole or majority shareholder of and controls Duke Vascular. Duke Vascular is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91 because it is the instrumentality and alter ego of LaDuca and has been used by LaDuca to misappropriate corporate opportunities belonging to CorMatrix and to further LaDuca's breaches of fiduciary duty and the duty of loyalty to CorMatrix. Duke Vascular may be served with process by (i) serving its registered agent, Delaware Corporate Agents, Inc., at 4406 Tennyson Road, Wilmington, Delaware 19802 or (ii) serving LaDuca who is an officer of Duke Vascular.

4. Venue is proper in this Court pursuant to O.C.G.A. § 9-10-93.

II. FACTUAL BACKGROUND

5. CorMatrix is a tissue engineering and medical device company that is engaged in the business of researching, developing, manufacturing and marketing naturally-occurring extracellular matrix ("ECM") products for cardiovascular applications.

6. ECM is made from the submucosal lining of pigs' digestive tracts. There are four basic types of ECM: (1) UBS or urinary bladder submucosa, (2) SS or stomach submucosa, (3) LBM or liver basement membrane and (4) SIS

2

or small intestinal submucosa. The processed ECM retains the natural composition of matrix molecules including collagen, growth factors, proteins, and cytokines, which are known to have important roles in host tissue repair and remodeling and can be refined to a lattice or scaffolding that human stem cells can latch onto as they grow and divide in the human body. CorMatrix incorporates this lattice or ECM technology platform into cardiovascular products that are intended to treat a wide range of cardiovascular diseases.

7. On November 16, 2001, CorMatrix entered into a License Agreement with Purdue Research Foundation (the "Purdue License"), pursuant to which CorMatrix obtained an exclusive, world-wide license to develop, manufacture and market a wide range of cardiovascular-related products utilizing patents owned by the Purdue Research Foundation (the "Purdue Patents").

8. The Primary Field of Use for the Purdue Patents is cardiovascular applications, including all applications of tissue scaffolding that relate to the heart, veins and arteries in the body such as grafts, stents and coatings of constructs or linings.

9. On November 23, 2004, CorMatrix entered into a licensing agreement (the "Cook License") with Cook Biotech, Incorporated ("Cook Biotech") pursuant to which CorMatrix obtained the rights to use SIS for cardiovascular applications, including pericardial and myocardial repair. Included in this Cook License is a supply agreement whereby Cook Biotech

will make and supply the SIS material to CorMatrix for applications covered under the Cook License.

10. Exercising its rights under the Purdue and Cook Licenses, CorMatrix is developing, manufacturing and marketing products such as the "CorMatrix Patch for Pericardial Closure," which is used to repair or reconstruct the normal pericardium following open heart surgery. In layman's terms, the pericardium is the sack that surrounds the human heart. During open heart surgery, the pericardium is cut open, but is often not repaired or "closed" at the conclusion of the surgery. The CorMatrix Patch is used to reconstruct or repair the pericardium, allowing human cells to grow into the extracellular lattice of the ECM Patch. The CorMatrix Patch represents a revolutionary platform technology that has already received FDA clearance to market.

11. CorMatrix is also in the process of developing numerous other ECM products for cardiovascular applications, including patch products for other intracardiac applications, valve and valve leaflet repair, vascular grafts or conduits, multiple stent related applications such as aortic stent coated grafts, peripheral stents, a bio-remodelable stent made out of the ECM and an injectable form of ECM that may be delivered via catheter delivery systems or other minimally invasive methods.

### Defendant Robert LaDuca and the Taheri Stent

12. LaDuca is the President and believed to be the majority shareholder of a company known as Duke Empirical, Inc. ("Duke Empirical"),

which is headquartered in Santa Cruz, California. Duke Empirical is in the business of designing, prototyping and manufacturing clinical medical devices in the cardiovascular field.

13. Dr. Syde Taheri is a cardiovascular and thoracic surgeon. Dr. Taheri is the inventor of an aortic arch stent graph (the "Taheri Stent"). Dr. Taheri's professional corporation, Syde A Taheri, M.D., P.C. ("Taheri PC"), owns patents for the Taheri Stent, to wit: United States Patent Nos. 6,723,116 B2; 6,099,548; 6,059,824; 6,030,414; 5,824,064; and 5,617,878 (the "Taheri Patents").

14. The Taheri Patents make no mention of the use of ECM in connection with the Taheri Stent.

15. In the first half of 2003, LaDuca entered into negotiations with Dr. Taheri and Taheri PC to license the Taheri Patents. Those negotiations culminated in a Patent License Agreement (the "Taheri License") between Taheri PC and a company known as Duke Fiduciary, LLC ("Duke Fiduciary"). Pursuant to the Taheri License, Duke Fiduciary obtained a world-wide exclusive license to the Taheri Patents, including the Taheri Stent. The Taheri License was executed on or about July 15, 2003.

16. Upon information and belief, Duke Fiduciary is a Delaware limited liability company that is owned and controlled by LaDuca.

### LaDuca becomes a shareholder, officer and director of CorMatrix

17. In late 2003, LaDuca entered into discussions with CorMatrix's Founder, Dr. Robert Matheny. The parties discussed the possibility of LaDuca

5

US2000 9839418.2

investing in CorMatrix and participating in the development of future CorMatrix products.

18. At the time CorMatrix entered into these discussions with LaDuca, it did not know about the Taheri License or that LaDuca had any rights with respect to the Taheri Stent or Taheri Patents.

### LaDuca invests in CorMatrix

19. In February 2004, LaDuca made the decision to invest in CorMatrix. However, LaDuca did not want to hold shares of CorMatrix in his own name or in his individual capacity. Accordingly, on February 9, 2004, LaDuca caused a limited liability company known as Duke Advantage, LLC ("Duke Advantage") to purchase 25,161 shares in CorMatrix for a total purchase price of $350,000.

20. Upon information and belief, LaDuca and his father are the sole members of and control Duke Advantage.

21. Following Duke Advantage's acquisition of shares in CorMatrix, LaDuca was elected to CorMatrix's Board of Directors and made an officer of CorMatrix, holding the title of Vice President of Operations.

22. Although LaDuca was not and is not an employee of CorMatrix, he was heavily involved in both the strategic and day-to-day operations of the Company, to wit:

- LaDuca had day-to-day, operational responsibility for CorMatrix's West Coast Division.

- LaDuca was given responsibility for CorMatrix's efforts to develop cather delivery systems for its injectible ECM material, setup of the CorMatrix operational facility within the same building as Duke Empirical for the purpose of manufacturing and distributing the ECM products, prototyping various composite and stent coated products, including several different size stent coated grafts to include an aortic stent coated with ECM. One of these Aortic ECM coated stent grafts was implanted into a dog as part of a pre-clinical feasibility study.
- LaDuca negotiated with vendors and suppliers on behalf of CorMatrix.
- LaDuca made recommendations regarding the hiring of employees by CorMatrix.
- LaDuca had regular dealings with CorMatrix's legal counsel, including the attorneys advising CorMatrix on intellectual property issues.
- LaDuca was intimately involved in the creation of CorMatrix's confidential Design History File, Quality System, as well as SOP's required by the FDA to establish the CorMatrix medical device manufacturing facility.

23.    As a result of (i) his status as an officer and director of CorMatrix, (ii) the trust and confidences reposed in him and (iii) his activities on behalf of CorMatrix described in the preceding paragraph, LaDuca owes fiduciary duties to CorMatrix and its shareholders.

24.    Furthermore, in connection with his investment in CorMatrix, LaDuca was given confidential, proprietary and trade secret information

7

belonging to CorMatrix, including CorMatrix's business plans, strategies and financial information. Specifically, LaDuca was given information regarding CorMatrix's plans to develop a wide range of cardiovascular devices using or incorporating the ECM technology, including patch applications, valve and valve repair, vascular grafts, tents and stents coated with ECM, including an aortic stent coated with ECM and emulsified or injectable forms of ECM and Standard Operation Procedures or SOP's that detailed the processing and manufacturing of the base ECM material.

25. The materials and the information described in the preceding paragraph are trade secrets under Georgia law because they (i) are not commonly known by or available to the public, (ii) derive economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use and (iii) are subject to efforts that are reasonable under the circumstances to maintain their secrecy.

26. In connection with the disclosure of CorMatrix's confidential proprietary and trade secret information described above, LaDuca signed a non-disclosure agreement (the "NDA"), pursuant to which LaDuca agreed to maintain the confidentiality of CorMatrix's trade secret information and not to use it or disclose it to any third party without CorMatrix's written consent.

### LaDuca seeks to sublicense the Purdue Patents for the purpose of using ECM in connection with the Taheri Stent

27. In 2005, LaDuca approached CorMatrix and asked if he or one of his companies could obtain a sublicense from CorMatrix under the Purdue and Cook Licenses for the purpose of developing a version of the Taheri Stent coated with ECM.

28. CorMatrix rejected LaDuca's request for a sublicense on the grounds that CorMatrix would be developing all of these other cardiovascular applications, and that CorMatrix, not LaDuca, should have the right to develop an ECM coating for the Taheri Stent.

### LaDuca competes with CorMatrix

29. After being rebuffed by CorMatrix, LaDuca secretly embarked on a scheme to develop an ECM coating for the Taheri Stent.

30. LaDuca made numerous presentations to industry and investment community professionals in an effort to raise seed capital for his Taheri Stent project. LaDuca also contacted other companies involved in developing products using ECM in an effort to secure intellectual property rights and products necessary to market and distribute a Taheri Stent coated with ECM.

31. LaDuca filed patent applications in the name of Duke Vascular, seeking patents, which included (i) a version of the Taheri Stent coated with ECM, (ii) a device that would aid in the injection of ECM into the human body, (iii) a Stent made out of the ECM material, and on information and

belief other patents all of which were based on confidential information or technology obtained from his involvement with CorMatrix. In connection with the Duke Vascular Patent Applications, LaDuca used, for his own purposes, trade secret and other confidential information that was provided to him pursuant to the NDA and in his capacity as an officer, director and shareholder of CorMatrix.

32. Furthermore, LaDuca hired CorMatrix's patent law firm to assist him with the Duke Vascular Patent Applications. Since February 2004, CorMatrix has been represented by the law firm of Bozicevic, Field & Francis, LLP ("BFF"), an intellectual property law firm located in Menlo Park, California. BFF has been and was representing CorMatrix in connection with patent applications, disputes, advice, etc. relating to the ECM Technology. Carol LaSalle was the BFF partner primarily responsible for CorMatrix's representation.

33. Upon information and belief, LaDuca not only hired BFF to file and prosecute the Duke Vascular Patent Applications, he also hired Carol LaSalle to serve as his in-house counsel for Duke Vascular.

<u>CorMatrix confronts LaDuca</u>

34. On numerous occasions including just prior to the CorMatrix Annual Shareholders meeting October 2006, and as recently as December 2006, representatives of CorMatrix confronted LaDuca regarding the Duke Vascular Patent Applications and his efforts to license ECM technology from other sources. CorMatrix representatives explained that LaDuca's pursuit of

10

Case 5:07-cv-02950-RMW    Document 9-3    Filed 06/13/2007    Page 12 of 17

those Duke Vascular Patent Applications or any ECM related cardiovascular application as well as pursuit of a business relationship with other companies involved in developing products using ECM constituted a conflict of interest and a misappropriation of corporate opportunities belonging to CorMatrix.

35. On at least four separate occasions, including one with Carol LaSalle from BFF on the phone, LaDuca promised to assign all rights to the Duke Vascular Patent Applications to CorMatrix and discontinue his negotiations with other companies involved in developing ECM related products.

36. Despite repeated demands, LaDuca has failed to assign his rights to the Duke Vascular Patent Applications to CorMatrix and on information and belief continues to negotiate strategic business or investment relationships utilizing the CorMatrix technology.

### Count 1 – Misappropriation of Corporate Opportunity

37. CorMatrix incorporates by reference as if set forth fully herein, the allegations contained in Paragraphs 1 through 36 of this Complaint.

38. The Duke Vascular Patent Applications represent corporate opportunities belonging to CorMatrix because they are in the line of CorMatrix's business, are of a practical advantage to CorMatrix, are opportunities in which CorMatrix has an interest or reasonable expectancy and CorMatrix has the financial ability to pursue those opportunities.

11

US2000 9839418.2

EXHIBIT A

39. By appropriating the corporate opportunities presented by the Duke Vascular Patent Applications for himself and through Duke Vascular, LaDuca has misappropriated a corporate opportunity belonging to CorMatrix.

40. As a proximate result of LaDuca's misappropriation of corporate opportunities, CorMatrix has sustained damages in an amount to be proven at trial.

### Count 2 – Breach of Fiduciary Duty

41. CorMatrix incorporates by reference as if set forth fully herein, the allegations contained in Paragraphs 1 through 40 of this Complaint.

42. LaDuca breached his fiduciary obligations to CorMatrix by filing and pursuing the Duke Vascular Patent Applications and entering into negotiations with other companies involved in developing products using ECM.

43. LaDuca's breaches of fiduciary duty have proximately caused damages to CorMatrix in an amount to be proven at trial.

### Count 3 – Breach of the Duty of Loyalty

44. CorMatrix incorporates by reference as if set forth fully herein, the allegations contained in Paragraphs 1 through 43 of this Complaint.

45. By virtue of his duties for and responsibilities to CorMatrix described in Paragraph 22 above, LaDuca owed a duty of loyalty to CorMatrix.

46. LaDuca breached his duty of loyalty to CorMatrix by filing the Duke Vascular Patent Applications and entering into negotiations with other

companies involved in developing products using ECM and otherwise competing against CorMatrix.

47. As a proximate result of LaDuca's breaches of his duty of loyalty, CorMatrix has suffered damages in an amount to be proven at trial.

### Count 4 – Constructive Trust

48. CorMatrix incorporates by reference as if set forth fully herein, the allegations contained in Paragraphs 1 through 47 of this Complaint.

49. LaDuca wrongfully caused Duke Vascular to file and prosecute the Duke Vascular Patent Applications. It is against equity that LaDuca and/or Duke Vascular should be allowed to retain an interest, directly, or indirectly, in the Duke Vascular Patent Applications.

50. As a result of the foregoing, the Court should impose a constructive trust on the Duke Vascular Patent Applications and any other ECM related patents filed by or on behalf of LaDuca or any entity in which he has an interest or controls for the benefit of CorMatrix.

### Count 5 - Theft of Trade Secrets in Violation of O.C.G.A. § 10-1-760 et seq.

51. CorMatrix incorporates by reference as if set forth fully herein, the allegations contained in Paragraphs 1 through 50 of this Complaint.

52. LaDuca has misappropriated CorMatrix's trade secrets in connection with the filing of the Duke Vascular Patent Applications and his attempt to commercialize ECM cardiovascular related products.

13

53. As a result of LaDuca's misappropriation of trade secrets, CorMatrix has suffered damages in an amount to be proven at trial.

### Count 6 – Breach of Contract

54. CorMatrix incorporates by reference as if set forth fully herein, the allegations contained in Paragraphs 1 through 53 of this Complaint.

55. LaDuca breached the NDA by using the confidential and trade secret information he was provided by CorMatrix to file and pursue the Duke Vascular Patent Applications and commercialize ECM cardiovascular related products.

56. As a result of LaDuca's breaches of the NDA, CorMatrix has proximately suffered damages in an amount to be proven at trial.

### Count 7 – Punitive Damages

57. CorMatrix incorporates by reference as if set forth fully herein, the allegations contained in Paragraphs 1 through 56 of this Complaint.

58. The tortious and wrongful acts alleged in Counts 1, 2, 3 and 5 above, constitute willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequences so as to authorize an award of punitive damages under O.C.G.A. § 51-12-5.1.

### Count 8 – Expenses of Litigation

59. CorMatrix incorporates by reference as if set forth fully herein, the allegations contained in Paragraphs 1 through 58 of this Complaint.

60. LaDuca has been stubbornly litigious, acted in bad faith and has caused CorMatrix unnecessary trouble and expense, justifying an award of expenses of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, CorMatrix respectfully prays that the Court:

1. Conduct a trial by jury of all claims asserted herein that are so triable.

2. Enter judgment in favor of CorMatrix on all claims asserted in this Complaint and award damages in an amount consistent with the jury's verdict.

3. Impose a constructive trust upon the Duke Vascular Patent Applications and any other ECM related patents filed by or on behalf of LaDuca or any entity in which he has an interest or controls in favor of CorMatrix.

4. Grant CorMatrix such other and further relief as it deems just and proper.

This 14th day of March, 2007.

*Angela N Frazier*

Susan A. Cahoon, Esq.
Georgia Bar No. 102000
Craig E. Bertschi, Esq.
Georgia Bar No. 055739
Angela N. Frazier, Esq.
Georgia Bar No. 141239

KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Counsel for Plaintiff

EXHIBIT A