# EXHIBIT B

1   I. NEEL CHATTERJEE (State Bar No. 173985)
    CHRISTIAN N. BROWN (State Bar No. 233147)
2   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
3   Menlo Park, CA  94025
    Telephone:    650-614-7400
4   Facsimile:     650-614-7401

5   Attorneys for Plaintiffs
    DUKE FIDUCIARY, LLC, DUKE EMPIRICAL, INC., AND
6   ROBERT GLINES

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 COUNTY OF SANTA CLARA

10

| | |
|---|---|
| 11  DUKE EMPIRICAL, INC., a corporation, DUKE FIDUCIARY, LLC., a company, 12  ROBERT GLINES, an individual, 13         Plaintiffs, 14     v. 15  CORMATRIX CARDIOVASCULAR, a corporation, ROBERT G. MATHENY, an 16  individual, DAVID B. CAMP, an individual, and BEECHER LEWIS, an individual, 17         Defendants. 18 19 20 | CASE NO. **107** CV084231<br><br>COMPLAINT FOR:<br><br>(1) **DECLARATORY RELIEF PURSUANT TO CIVIL PROCEDURE CODE § 1060**<br><br>(2) **BREACH OF IMPLIED-IN-FACT CONTRACT**<br><br>(3) **COMMON LAW MISAPPROPRIATION**<br><br>(4) **FRAUD – CIVIL CODE § 1710(4)** |

21

22

23

24

25

26

27

28

OHS West:260209853.9

                        COMPLAINT

EXHIBIT B

1      Plaintiffs Duke Empirical, Inc., Duke Fiduciary, LLC, and Robert Glines (collectively,

2  "Plaintiffs") allege as follows:

3                         **THE PARTIES**

4      1.  Plaintiff Duke Empirical, Inc. ("Duke Empirical") is a corporation organized and

5  existing under the laws of the State of Delaware, and is and was at all times mentioned herein

6  qualified to do business in California.

7      2.  Plaintiff Duke Fiduciary, LLC ("Duke Fiduciary") is a corporation organized and

8  existing under the laws of the State of Nevada.  Robert LaDuca ("LaDuca") is a resident of Santa

9  Cruz, California and a member of Duke Fiduciary.  Duke Fiduciary is a licensee and assignee of

10  certain issued patents and patent applications related to thoracic stents and other medical devices.

11      3.  Plaintiff Robert Glines ("Glines") is an individual and resident of the State of

12  California.

13      4.  Defendant CorMatrix Cardiovascular, Inc. ("CorMatrix") is a Georgia corporation.

14  Cormatrix's website identifies its only business address as 155 Moffett Park Drive, Suite A-240,

15  Sunnyvale, CA 94089.  On information and belief, this address is CorMatrix's principal place of

16  business.

17      5.  Defendant Robert G. Matheny, M.D. ("Matheny") is an individual.  Matheny is the

18  Chief Medical Officer of CorMatrix, and a member of CorMatrix's board of directors.  On

19  information and belief, Matheny is a resident of the State of Georgia

20      6.  Defendant David B. Camp ("Camp") is an individual.  Camp is the Chief Executive

21  Officer of CorMatrix, and a member of CorMatrix's board of directors.  On information and

22  belief, Camp is a resident of the State of Georgia

23      7.  Defendant Beecher Lewis ("Lewis") is an individual.  Lewis is the President and

24  Chief Operating Officer of CorMatrix, and a member of CorMatrix's board of directors.  On

25  information and belief, Lewis is a resident of the State of Florida.

26      8.  Matheny, Camp and Lewis are the highest-ranking officers of CorMatrix and make

27  up a majority of the company's board of directors.  Through their effective control and

28  dominance over CorMatrix's activities, Matheny, Camp and Lewis have used CorMatrix to

OHS West:260209853.9

COMPLAINT

1  perpetrate the actions complained of herein.  By failing to observe the separate legal existence of

2  CorMatrix and by causing CorMatrix to take the actions described below, Matheny, Camp and

3  Lewis are individually liable for CorMatrix's wrongful acts.

### JURISDICTION & VENUE

5      9.  Defendant CorMatrix transacts business within the State of California and engaged in

6  business within this state with Duke Empirical, giving rise to the present controversy between the

7  parties.  CorMatrix maintains an office in Sunnyvale, California.  This court has jurisdiction over

8  the subject matter of this action pursuant to California Code of Civil Procedure Section 1060 and

9  Section 410.10.

10     10.  Defendants Matheny, Camp and Lewis have taken actions causing injury within the

11  State of California, which injuries were proximately caused by actions taken both within and

12  outside the State of California.

13     11.  Venue in this Court is proper under California Code of Civil Procedure Section 395

14  and 395.5.

### FACTUAL BACKGROUND

16     12.  Duke Empirical is a medical research and development company that designs,

17  prototypes and manufactures medical devices.  Duke Empirical employs 26 people at its facilities

18  in Santa Cruz, California.

19     13.  Duke Fiduciary is a limited liability company created to hold specific intellectual

20  property rights related to medical devices.

21     14.  Defendant CorMatrix is a corporation which claims to develop and market products

22  incorporating extracellular matrix ("ECM") materials for use in myocardial and pericardial repair

23  applications.

24     15.  ECM, produced from the devitalized submucosal linings of porcine anatomy, is a

25  well-known natural substance that can be used for various medical purposes.  A number of

26  corporations and individuals hold patents to various subtypes and uses of ECM.  A number of

27  potential uses for ECM, including its potential for use as a coating on surgically implanted

28  medical devices, have been generally known within the biotechnology industry for some time.

OHS West:260209853.9                    - 2 -

EXHIBIT B

1   For example, work done by Dusan Pavcnik in 2001, and reported in the *Journal of Vascular and*
2   *Interventional Radiology*, 13:489-498 (2002) describes the use of ECM as a covering on metal
3   stents.  There have been numerous patents issued disclosing the use of ECM as a stent graft, or
4   ECM as the covering of a stent, and there have been numerous patent applications published for
5   the use of ECM as a stent graft, such as an application filed by Acell, Inc. in 2001 which makes
6   claims for the use of ECM as a coating on a "tissue defect fixation device."

7          16.  On information and belief, CorMatrix does not own any issued patents related to
8   ECM.  Rather, CorMatrix has limited rights to use a particular form of ECM for myocardial and
9   pericardial repair applications.

10         17.  CorMatrix obtained a license from Purdue Research Foundation (the "Purdue
11  License") in 2001, pursuant to which CorMatrix was given a limited license to use specified
12  forms of ECM in particular cardiovascular applications.

13         18.  CorMatrix also entered into a license agreement with Cook Biotech, Inc. ("Cook") in
14  2004, pursuant to which CorMatrix was granted the right to use a specific form of ECM in
15  myocardial and pericardial repair applications.  Cook also made an agreement to supply
16  CorMatrix with Small Intestine Submucosa ("SIS"), a particular form of ECM, but only for use in
17  myocardial and pericardial repair applications.  On information and belief, Cook represents
18  CorMatrix's sole supply of processed ECM.

19         19.  CorMatrix is unable to develop and market an ECM-coated aortic stent product,
20  because it has no source of ECM to use for that purpose.  CorMatrix is currently unable to
21  manufacture its own ECM materials, as it does not have the facilities or necessary infrastructure
22  in place to do so.  On information and belief, CorMatrix lacks the financial resources to develop
23  the facilities and infrastructure that would allow it to manufacture ECM.  CorMatrix purchases
24  the SIS variety of ECM from Cook under the parties' supply agreement, which limits CorMatrix
25  to myocardial and pericardial repair applications.

26                    **LaDuca Discusses ECM with CorMatrix**

27         20.  LaDuca, a member of Duke Fiduciary and the Chief Executive Officer of Duke
28  Empirical, is an inventor.  He is listed as an inventor on 8 issued patents and has filed additional

1  patent applications related to medical stents and other medical devices. In 2003, Duke Fiduciary

2  obtained certain intellectual property rights related to aortic stent grafts. LaDuca was attempting

3  to develop uses for these rights, and was considering multiple coatings for aortic stent grafts,

4  including ECM.

5      21.  LaDuca learned of CorMatrix and learned that CorMatrix was involved in developing

6  ECM. In or around June of 2003, LaDuca met with Robert Matheny ("Matheny"), who purports

7  to be a founder of CorMatrix, in San Francisco to discuss numerous issues, including using ECM

8  with stent grafts. On information and belief, CorMatrix has no intellectual property rights to

9  aortic stent grafts, and these devices are not within the scope of CorMatrix's business. Before

10  any obligations of any kind were discussed, Matheny and LaDuca discussed the possibility of

11  coating the stent grafts LaDuca was developing with ECM. LaDuca presented this idea to

12  Matheny. No resolution was reached at this meeting, however.

13      **LaDuca Invests In and Begins Assisting CorMatrix**

14      22.  In or around November 2003, a potential investor in CorMatrix refrained from

15  investing in the company, citing concerns about CorMatrix's intellectual property position.

16  Following the potential investor's decision, CorMatrix was in danger of being unable to make a

17  required payment to Purdue Research Foundation pursuant to the parties' licensing agreement.

18  Missing the payment could have resulted in CorMatrix losing its rights to use ECM under the

19  Purdue License. CorMatrix would likely have been out of business.

20      23.  On February 9, 2004, Duke Advantage, LLC ("Duke Advantage"), a limited-liability

21  company owned by LaDuca and his father, invested $350,000 in CorMatrix in exchange for

22  25,161 shares of CorMatrix common stock. This investment allowed CorMatrix to pay the fees

23  due under the Purdue License.

24      24.  Both prior to Duke Advantage's investment and subsequently, Plaintiff Duke

25  Empirical undertook substantial efforts to assist CorMatrix in developing its business.

26      25.  For example, Duke Empirical provided low-cost office space to CorMatrix within its

27  Santa Cruz, California facility and provided CorMatrix with services from Duke Empirical

28  employees at a 20-percent discounted hourly rate.

OHS West:260209853.9                    - 4 -

EXHIBIT B

1    26.   Defendants also induced Duke Empirical to make purchases and expend time, effort

2   and money as part of an expansion plan.  Defendants told LaDuca that CorMatrix had obtained

3   additional funding and would need to quickly expand business operations at the Santa Cruz

4   location.

5    27.   Duke Empirical acquired office and manufacturing equipment from Corazon

6   Technologies, Inc. ("Corazon").  CorMatrix, acting through Matheny, induced Duke Empirical to

7   make the acquisition with the promise that it would make use of a substantial portion of the

8   Corazon equipment, as CorMatrix was planning to expand its operations.  But for CorMatrix's

9   conduct exhibiting an agreement to purchase a substantial portion of this equipment, Duke

10   Empirical would not have acquired the Corazon assets.

11    28.   Duke Empirical also established a research-services subscription with Nerac, Inc..

12   This subscription was used to conduct research on ECM-related topics for CorMatrix and the

13   Individual Defendants.  Duke Empirical provided information obtained from the subscription to

14   CorMatrix for its use in developing business strategy, developing technology, and obtaining

15   further investment.  The subscription was maintained for approximately one year.  CorMatrix

16   never gave Duke Empirical any consideration for this service, despite stating it would eventually

17   do so.

18    29.   Duke Empirical purchased and provided an industry report to CorMatrix, entitled

19   "Tissue Engineering and Cell Transplantation: Technologies, Opportunities, and Evolving

20   Markets."  Duke Empirical was not given any consideration for this contribution, despite

21   CorMatrix stating it would eventually do so.

22    30.   Duke Empirical also prepared certain prototypes of medical devices for the

23   Defendants.  On information and belief, Defendants used the prototypes to try to raise funds or

24   obtain business relationships.  Despite their statement that they would compensate Duke

25   Empirical, Defendants never provided consideration for the prototypes, despite the substantial

26   time and effort spent by Duke Empirical, and did not return them.

27    **Defendants Deceive Glines into Performing Work for CorMatrix**

28    31.   Robert Glines has known Matheny since he and Matheny worked for the same

OHS West:260209853.9    - 5 -

EXHIBIT B

1  company, CTS, in the late 1990s. An engineer with extensive experience in the biotechnology

2  field, Glines possesses a wealth of knowledge not only in the areas of medical device design and

3  engineering, but also in analyzing and devising biotechnology-related marketing and sales

4  strategies.

5          32.  Prior to CorMatrix's founding, Glines visited Matheny at the Purdue Research

6  Foundation in Indiana, where Matheny was working with ECM.

7          33.  Following their meeting, Matheny and Glines stayed in touch, exchanging occasional

8  email about Matheny's work with ECM. Matheny said he was interested in obtaining a license to

9  ECM from Purdue Research Foundation for his product so that he could start a new company.

10  Glines helped create a presentation Matheny used in a pitch to convince Purdue Research

11  Foundation to grant a license. As a result, Matheny obtained the Purdue License and founded

12  CorMatrix.

13          34.  After CorMatrix was founded, Matheny and Glines continued to talk occasionally.

14  Matheny at one point raised the possibility of Glines working for CorMatrix.

15          35.  In mid-2003, Glines introduced Matheny to LaDuca.

16          36.  In March of 2004, Matheny solicited Glines' help in analyzing and improving

17  CorMatrix's business plans and strategy. Specifically, Matheny and CorMatrix wanted Glines to

18  apply his experience in the field of biotechnology sales and marketing to develop a business plan

19  that could be used to attract investments in CorMatrix. Matheny told Glines that he would be

20  given consideration for his efforts (such as stock options), representing that Glines' contributions

21  would not go unrewarded and that CorMatrix would take care of Glines for his efforts. These

22  representations were false.

23          37.  Glines relied on Matheny's representation based on his relationship and prior

24  dealings with Matheny, and his familiarity with the common practice of start-up companies of

25  using stock options in place of cash to pay for needed services.

26          38.  Glines engaged in substantial efforts to evaluate CorMatrix's existing business plan,

27  identify its weaknesses, and develop new ideas and strategies to address them. Glines conceived

28  and produced a comprehensive business plan that, on information and belief, Defendants have

OHS West:260209853.9                                    - 6 -

COMPLAINT

EXHIBIT B

1    successfully used to attract additional investment.

2        39.  Glines' business plan directed that CorMatrix should quickly develop and obtain

3    regulatory approval for at least one ECM-related product it could quickly bring to market, thereby

4    increasing the company's credibility with investors.  Glines also performed many hours of market

5    research and analysis, arriving at a marketing plan that demonstrated the company's potential

6    market.  Glines developed a complete budget for CorMatrix that illustrated how the company

7    would make use of invested funds to achieve progress and grow its business.

8        40.  CorMatrix benefited from Glines' efforts by obtaining additional investment using

9    the business plan and strategies Glines developed.  As outlined in the plan Glines developed,

10    CorMatrix quickly developed and obtained regulatory approval for a pericardial patch that it

11    began marketing and continues to sell today.  The marketing plan and budget Glines developed

12    were used to demonstrate the company's potential to subsequent investors.  CorMatrix has

13    benefited greatly by Glines' contribution.

14        41.  To date, Defendants have failed to provide Glines with any consideration for his

15    substantial efforts.

16        42.  Indeed, on information and belief, Defendants never intended to meet its obligations.

17    Statements by CorMatrix executives to the effect that CorMatrix regularly seeks to avoid its

18    financial obligations due to its limited funding (*see* paragraph 54 below) indicate that CorMatrix

19    never intended to provide Glines with any consideration for his work, despite representing that it

20    would do so.

21            **CorMatrix Refuses to Sublicense ECM for Use In Stent Grafts**

22        43.  In mid 2005, Duke Empirical resumed negotiations with CorMatrix about the

23    possibility of obtaining a sublicense from CorMatrix for the use of ECM materials on the aortic

24    stent graft Duke Empirical was developing.  No agreement was reached.

25        44.  In January of 2006, CorMatrix held a meeting at its Santa Cruz offices.  Participants

26    at the meeting included LaDuca, LaDuca's father Dr. John LaDuca, regulatory consultants Mike

27    and Darlene Billig of the Experien Group, patent attorneys Karl Bozecevic and Carol LaSalle,

28    and CorMatrix founder Matheny, Chief Executive Officer David Camp, and Chief Operating

OHS West:260209853.9                            - 7 -

COMPLAINT

EXHIBIT B

1    Officer and President Beecher Lewis. During this meeting, LaDuca again raised the topic of a

2    sublicense from CorMatrix for the use of ECM in his aortic stent grafts.

3        45.  CorMatrix's officers declined to extend a sublicense, saying that CorMatrix's supply

4    agreement with Cook only authorized CorMatrix to use Cook-supplied ECM in connection with

5    myocardial and pericardial repair applications, not stents, because Cook had an existing product

6    in the thoracic stent space. Not wanting to have Cook view CorMatrix as a competitor and

7    potentially risk its supply agreement with Cook, CorMatrix declined to grant any sublicense.

8    CorMatrix did not claim at that time that it wished to pursue its own development of an ECM-

9    coated stent. In fact, CorMatrix's executives said that not only was CorMatrix not interested in

10   pursuing an ECM-coated stent for these reasons, it did not have the financial means to develop

11   such a device on its own.

12       46.  While CorMatrix declined to pursue development of an aortic stent graft, it

13   nevertheless encouraged LaDuca to continue working "quietly" on an ECM-coated stent graft,

14   saying that CorMatrix might revisit the idea if LaDuca was ever able to develop anything of

15   value. Camp and Matheny conveyed that CorMatrix did not want LaDuca to reveal that

16   CorMatrix would consider a partnership for the use of ECM as a stent cover. CorMatrix desired

17   to have LaDuca fund and continue development of the ECM-coated stent, saying it would revisit

18   the possibility of a sublicense once CorMatrix was able to establish its own supply of processed

19   ECM materials.

20       47.  LaDuca informed the CorMatrix executives that his company would use a material

21   other than ECM, as he did not want to engage in costly development of a medical device that

22   would require a license from one of the many companies vying to establish their own similar

23   product. CorMatrix stated it would not participate in that development effort, but nonetheless

24   wished LaDuca the best of luck in his efforts to develop an aortic stent graft on his own through

25   his other entities.

26       48.  Since the January 2006 meeting, LaDuca has stopped using ECM, and has not sought

27   a license from any other party which may have rights to ECM. He has not used any data or

28   information related to the use of ECM in stent grafts, and has employed alternate technology free

OHS West:260209853.9                          - 8 -

1    from any possible infringement issues, developing a stent graft using a woven polyester fabric.

2        49. Duke Fiduciary began efforts to file patent applications related to stent and catheter

3    products in January of 2005. These patent applications in no way relied upon or revealed any

4    confidential or purported trade secret information obtained from CorMatrix. In fact, all of the

5    information related to stent graft and catheter coatings was known to Duke Fiduciary and Duke

6    Empirical before any discussions with CorMatrix.

7        50. The patents Duke Fiduciary has applied for list a number of materials that could

8    comprise a covering for the described stent. The applications contemplate in the same manner as

9    an ECM cover, that Teflon or ePTFE could be used as a covering for the stent.

10    **The Relationship Between Duke Empirical and CorMatrix Deteriorates**

11        51. By early 2006, Duke Empirical was growing concerned that CorMatrix might not

12    continue paying amounts owed for the office space and the Duke Empirical employees CorMatrix

13    was using.

14        52. CorMatrix complained to Duke Empirical about expenses it had incurred related to

15    the build-out of office space in the Santa Cruz facility, the amount of money it was paying to use

16    that space, and the hourly rates it was being charged for work carried out on its behalf by Duke

17    Empirical employees. CorMatrix eventually asked that Duke Empirical stop charging CorMatrix

18    for its services until it brought a product to market. Duke Empirical refused.

19        53. By early 2006, after lengthy delays by CorMatrix in submitting payment to Duke

20    Empirical for services rendered, Duke Empirical grew concerned that CorMatrix would continue

21    failing to pay amounts owed for the office space it was occupying and services Duke Empirical

22    employees were providing. LaDuca requested that a lease agreement and a services agreement be

23    signed as a condition of Duke Empirical continuing to provide CorMatrix with services, which

24    agreements included a provision that CorMatrix put down a deposit against future expenses.

25    CorMatrix refused to sign any such agreements.

26        54. In or around June of 2006, CorMatrix moved out of the Santa Cruz office space it

27    had been occupying and moved to its current location in Sunnyvale, California. When asked by

28    LaDuca why CorMatrix was moving out of the Duke Empirical space, CorMatrix President Lewis

OHS West:260209853.9

- 9 -

EXHIBIT B

1   stated that the real reason was because CorMatrix had a policy of trying to take advantage of

2   people and companies it did business with to minimize its financial exposure. Lewis, however,

3   used more colorful language at the time. Lewis said that because LaDuca was a substantial

4   shareholder, the company did not want to be in a position where it would have to do so with Duke

5   Empirical.

6                         **CorMatrix Sues LaDuca and Duke Vascular, Inc.**

7           55. On March 14, 2007, CorMatrix filed suit against LaDuca and Duke Vascular, Inc.

8   ("Duke Vascular") in the Superior Court of Fulton County, Georgia, alleging trade secret theft,

9   misappropriation of corporate opportunity, breaches of fiduciary duty and the duty of loyalty, and

10  seeking related relief. Duke Vascular is an entity LaDuca formed for the purpose of marketing an

11  aortic stent product under a license from Duke Fiduciary.

12          56. LaDuca and Duke Vascular have not been served with the Georgia state action as of

13  the date of this Complaint.

14          57. CorMatrix alleges that it has trade secrets in plans to develop various cardiovascular

15  devices using ECM materials, despite the fact that LaDuca and Matheny openly discussed such

16  ideas prior to executing any confidentiality agreements.

17                                    **CAUSES OF ACTION**

18                                    **First Cause of Action**

19                  (Duke Empirical's and Duke Fiduciary's Claim for Declaratory Relief)

20          58. Plaintiff Duke Empirical incorporates by reference all of the allegations contained in

21  paragraphs 1 through 57, inclusive, of this Complaint.

22          59. An actual controversy has arisen and now exists between Duke Empirical and

23  CorMatrix concerning their rights and duties related to alleged ECM-related trade secrets

24  belonging to CorMatrix. Specifically, Duke Empirical contends that as defined by the California

25  Uniform Trade Secret Act, Civil Code § 3426 *et seq.*, or, alternatively, the Georgia Trade Secret

26  Act, Official Code of Georgia Annotated § 10-1-760 *et seq.*, it did not misappropriate any trade

27  secrets belonging to CorMatrix.

28          60. Duke Empirical desires a judicial determination of its rights and duties under

OHS West:260209853.9                          - 10 -

                                             COMPLAINT

1  California law with respect to CorMatrix's claims that the use of ECM material in conjunction

2  with aortic stent grafts would constitute trade secret misappropriation.  Namely, Duke Empirical

3  and Duke Fiduciary seek a declaration that:  (1) California law is the governing law in this

4  dispute; (2) CorMatrix has no trade secret rights with respect to the use of ECM material on stent

5  grafts; (3) Duke Empirical and its employees did not misappropriate any commercially valuable

6  information; (4) Duke Fiduciary is the proper assignee of the patents it has applied for; (5) Duke

7  Empirical owns all rights to all nonpatentable technology it developed; (6) LaDuca, as an

8  employee of Duke Empirical, did not violate any confidentiality agreement with CorMatrix; (7) to

9  the extent CorMatrix has any rights whatsoever, CorMatrix is estopped and/or waived all rights

10  with respect to the technologies developed by Duke Empirical; (8) LaDuca, acting as Duke

11  Empirical's employee, did not usurp any corporate opportunities belonging to CorMatrix, and (9)

12  LaDuca was not a fiduciary to CorMatrix.

13                                    <u>**Second Cause of Action**</u>

14                      (Plaintiffs' Claim for Breach of Implied-In-Fact Contract)

15      61.  Plaintiffs incorporate by reference all of the allegations contained in paragraphs 1

16  through 60, inclusive, of this Complaint.  All right, title, and interest to any claims Glines may

17  have with respect to his relationship with Defendants.

18      62.  Duke Empirical and Glines spent considerable funds, time, obtained equipment, and

19  provided valuable information to CorMatrix with the expectation and understanding that they

20  would be compensated and that Defendants would share the associated costs and would grant

21  Glines stock options and other consideration.  Indeed, Duke Empirical and Glines engaged in

22  these efforts based on conduct by CorMatrix exhibiting an agreement to this effect.

23      63.  By failing to compensate Duke Empirical and Glines, CorMatrix breached its

24  implied-in-fact contracts with Duke Empirical and Glines.

25      64.  As a direct result of CorMatrix's breach, Duke Empirical and Glines have been

26  damaged by in amount to be determined at trial.

27  ///

28  ///

OHS West:260209853.9                           - 11 -

EXHIBIT B

### Third Cause of Action

#### (Plaintiffs' Claim for Common Law Misappropriation)

65.  Plaintiffs Duke Empirical and Glines incorporate by reference all of the allegations contained in paragraphs 1 through 64, inclusive, of this Complaint.

66.  Duke Empirical and Glines invested substantial time, money and effort in developing information, as described above.  Duke Empirical and Glines expected consideration in return if Defendants attempted to use any of their valuable information.  At little or no cost to them, Defendants did, in fact, make use of the information without authorization and for their own commercial benefit.

67.  This unauthorized use constitutes misappropriation of Duke Empirical's and Glines' commercially valuable information.

68.  Duke Empirical and Glines have been damaged by Defendants' actions in an amount to be determined at trial.

### Fourth Cause of Action

#### (Glines' Civil Code § 1710 Fraud Claim)

69.  Plaintiff Robert Glines incorporates by reference all of the allegations contained in paragraphs 1 through 68, inclusive, of this Complaint.

70.  Defendants represented that Glines would  be provided with consideration in exchange for his efforts in devising an improved business plan and strategy for CorMatrix.

71.  Defendants' representation that consideration would be provided was important to Glines' decision to undertake the work he performed, as he would not have undertaken such a substantial amount of work without reasonable compensation.  Defendants' subsequent statements indicate that any intention to provide Glines with consideration was lacking at the time the representation was made.

72.  Glines reasonably relied on Defendants' representation based on his prior dealings and relationship with Matheny and his familiarity with the practice of start-up companies using stock options to compensate others for needed services.

73.  Glines has been damaged as a result of relying on Defendants' misrepresentation, in

EXHIBIT B

1   that he performed a substantial amount of work for which he expected consideration.

2   **PRAYER FOR RELIEF**

3   Plaintiffs pray for the following relief:

4   As to the First Cause of Action:

5   1.    For declarations that (1) California law applies to this case; (2) CorMatrix has no

6   trade secret rights with respect to the use of ECM material on stent grafts; (3) Duke Empirical and

7   its employees did not misappropriate any commercially valuable information; (4) Duke Fiduciary

8   is the proper assignee of the patents it has applied for; (5) Duke Empirical owns all rights to all

9   nonpatentable technology it developed; (6) LaDuca, as an employee of Duke Empirical, did not

10  violate any confidentiality agreement with CorMatrix; (7) to the extent CorMatrix has any rights

11  whatsoever, CorMatrix is estopped and/or waived all rights with respect to the technologies

12  developed by Duke Empirical; (8) LaDuca, acting as Duke Empirical's employee, did not usurp

13  any corporate opportunities belonging to CorMatrix, and (9) LaDuca was not a fiduciary to

14  CorMatrix.

15  As to the Second Cause of Action:

16  1.    For an order entering judgment against all Defendants.

17  2.    For compensatory, general and/or special damages according to proof.

18  3.    For an award of restitution and unjust enrichment damages according to proof.

19  As to the Third Cause of Action:

20  1.    For an order entering judgment against all Defendants.

21  2.    For compensatory, general and/or special damages according to proof.

22  3.    For an order directing Defendants to account for and pay to Duke Empirical all

23  gains, profits and savings derived from their improper conduct.

24  4.    For an award of restitution and unjust enrichment damages according to proof.

25  5.    An injunction preventing further misappropriation of Duke Empirical's property

26  and information.

27  As to the Fourth Cause of Action:

28  1.    For an order entering judgment against all Defendants.

COMPLAINT

EXHIBIT B

1    2.    For compensatory, general and/or special damages according to proof.

2    3.    For an award of restitution and unjust enrichment damages according to proof.

3    4.    For punitive damages pursuant to California Civil Code § 3294(c)(3).

4    5.    For reasonable attorneys' fees and costs pursuant to California Code of Civil

5    Procedure § 1021.5.

6        As to all causes of action:

7        1.    For such other and further relief as the Court deems just and proper.

8

9    Dated: April 18, 2007                    ORRICK, HERRINGTON & SUTCLIFFE LLP

10

11                                              I. Neel Chatterjee
                                                Attorneys for Plaintiffs
                                              DUKE FIDUCIARY, LLC AND DUKE
12                                                  EMPIRICAL, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

EXHIBIT B