1   I. NEEL CHATTERJEE (State Bar No. 173985)
    ORRICK, HERRINGTON & SUTCLIFFE LLP
2   1000 Marsh Road
    Menlo Park, CA 94025
3   Telephone:    650-614-7400
    Facsimile:    650-614-7401
4
    JAMES N. KRAMER (State Bar No. 154709)
5   CHRISTIAN N. BROWN (State Bar No. 233147)
    ORRICK, HERRINGTON & SUTCLIFFE LLP
6   The Orrick Building
    405 Howard Street
7   San Francisco, CA 94105
    Telephone:    415-773-5700
8   Facsimile:    415-773-5759

9   Attorneys for Plaintiff
    DUKE ADVANTAGE, LLC
10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12
                          SAN JOSE DIVISION
13

14

15  DUKE ADVANTAGE, LLC, a company,          CASE NO.   C-07-2950 RMW

16              Plaintiff,                    *Santa Clara Superior Court
                                             Case No. 107 CV085326*
17         v.

18  CORMATRIX CARDIOVASCULAR, INC.,          **DEFENDANT DUKE ADVANTAGE,**
19  a corporation, ROBERT G. MATHENY, an     **LLC'S MEMORANDUM OF POINTS**
    individual, DAVID B. CAMP, an individual, **AND AUTHORITIES IN**
20  and BEECHER LEWIS, an individual,        **OPPOSITION TO DEFENDANTS'**
                                             **MOTION TO DISMISS**
21              Defendants.

22

23

24

25

26

27

28  OHS West:260260084.3
    ─────────────────────────────────────────────

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................1

    A.    Defendants Sold Securities to Duke Advantage in California ...............................1

    B.    The Subscription Agreement ..................................................................................2

    C.    The Stockholders Agreement .................................................................................3

    D.    Defendants Have Extensive Ties to This Forum ....................................................5

III.  ARGUMENT ..........................................................................................................6

    A.    Legal Standard .......................................................................................................6

    B.    The Forum Selection Clause Defendants Seek to Enforce is Void Under
        California Law .......................................................................................................6

    C.    Enforcing the Forum Selection Clause in the Subscription Agreement
        would Violate Strong California Public Policy Favoring Application of The
        State's Laws to Protect California Purchasers of Securities ..................................8

    D.    The Policy Behind Enforcement of Forum Selection Clauses is Frustrated
        by Conflicting Forum Selection Clauses..............................................................10

    E.    Venue is Proper in the Northern District of California ........................................11

IV.   CONCLUSION .....................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ................................................................................. 6, 8, 9, 10

*Hall v. Superior Court*,
    150 Cal. App.3d 411 (1983) ................................................................... 7, 8, 9

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ..................................................................... 8, 9

*Murphy v. Schneider Nat'l, Inc.*,
    362 F.3d 1133 (9th Cir. 2004) ......................................................................... 6

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal.4th 459 (1992)......................................................................................... 8

*Ravelo Monegro v. Rosa*,
    211 F.3d 509 (9th Cir. 2000) ........................................................................ 11

*Wimsatt v. Beverly Hills Weight Loss Clinics Int'l Inc.*,
    32 Cal.App.4th 1511 (1995) ............................................................................ 6

### STATUTES

California Corporations. Code
    § 25008(b)........................................................................................................ 9

    § 25013 ............................................................................................................. 8

    § 25701 .................................................................................................... 6, 7, 8, 9

1

## I.      INTRODUCTION

Plaintiff Duke Advantage, LLC ("Duke Advantage") chose to file the present action against Defendants CorMatrix Cardiovascular, Inc. ("CorMatrix"), Robert Matheny, David Camp, and Beecher Lewis (collectively "Defendants") in California because the forum-selection clause violates strong California public policy requiring application of the state's own securities laws to cases alleging improper sales to California residents.  The forum selection clause and choice of law provision appearing in the stock purchase agreement between the parties are unreasonable and void, because their joint operation would effectively deprive Duke Advantage of non-waivable protections afforded by California law.  California's securities law contains an express anti-waiver provision that declares void any agreements that would subvert its application in a case involving sales of securities to a California resident.  Defendants solicited a California resident to purchase securities and made fraudulent representations in connection with that sale.  Under established California law, this action should be heard here.

In addition, CorMatrix's purported forum selection clause can be disregarded under the circumstances of this case.  For example, the stock purchase agreement's forum selection clause conflicts with the forum selection clause found in the Stockholders Agreement governing Duke Advantage's rights and duties as an owner of CorMatrix stock.  Both conflicting forum clauses are mandatory in nature, and both are accompanied by similarly inconsistent choice of law provisions.  Such conflicting provisions indicate a lack of agreement, create confusion, and frustrate the policy behind enforcement of forum selection clauses, as the appropriate forum is entirely in question.  The Northern District should retain jurisdiction over this dispute in light of the parties' connections to this state, the transaction giving rise to the dispute having been executed in California, and because the plaintiff reasonably (and consistently with California law and policy) chose to file suit in this state.

## II.     FACTUAL BACKGROUND

### A.      Defendants Sold Securities to Duke Advantage in California

Plaintiff Duke Advantage, LLC ("Duke Advantage") is a limited liability company with its principal place of business located in Santa Cruz, California.  LaDuca is a member of Duke

1   Advantage, and is an inventor in the field of medical device development.  Declaration of Robert

2   LaDuca in Support of Plaintiff Duke Advantage's Opposition to Defendants' Motion to Dismiss

3   ("LaDuca Decl.") ¶ 3.

4        In June of 2003, LaDuca met with Robert G. Matheny ("Matheny"), the founder and Chief

5   Scientific Officer of Defendant CorMatrix, in San Francisco.  LaDuca and Matheny discussed the

6   technology CorMatrix was developing, and LaDuca offered suggestions for possible uses of

7   CorMatrix's technology, including its potential for use as a covering on a medical stent grafts and

8   other medical devices.  In February of 2004, CorMatrix was in need of additional investment, and

9   contacted LaDuca in Santa Cruz, California via telephone to inquire whether LaDuca was

10  interested in purchasing shares of CorMatrix stock.  After expressing interest, LaDuca negotiated

11  the terms of an investment with Matheny and other CorMatrix executives via telephone, email

12  and facsimile from his residence and office in Santa Cruz.  LaDuca Decl. ¶ 4.

13       Ultimately, the parties agreed that in exchange for a $350,000 investment in CorMatrix,

14  CorMatrix would cause 25,161 shares of its common stock to be issued to the Plaintiff Duke

15  Advantage, and Duke Advantage would be provided with representation on CorMatrix's Board of

16  Directors and an active role in overseeing the company's strategy and operations.  As alleged in

17  the Complaint, Defendants made the promise of a seat on the company's board and an active role

18  in the company knowing it to be false, with the intention of inducing Duke Advantage to make its

19  investment.  Since making its sizeable investment, Duke Advantage's member LaDuca has never

20  been invited to attend any board meetings.  When it became clear that the Defendants had not

21  lived up to that promise, and subsequently took a litigious stance towards LaDuca, Duke

22  Advantage filed the present Complaint.  LaDuca Decl. ¶ 5.

23       **B.     The Subscription Agreement**

24       In connection with Duke Advantage's investment, on February 9, 2004 CorMatrix

25  CFO John Thomas ("Thomas") faxed LaDuca a stock purchase agreement (the "Subscription

26  Agreement").  The Subscription Agreement governs the terms of the sale of CorMatrix stock,

27  memorializes the transaction, and provides the representations and warranties in connection the

28  sale.  Section 4.2 of the Subscription Agreement is entitled "Governing Law; Jurisdiction."  It

1  states:

2        (A)  THIS SUBSCRIPTION AGREEMENT SHALL BE
      GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH
3        THE INTERNAL LAWS OF THE STATE OF GEORGIA
      WITHOUT REGARD TO ITS CONFLICT OF LAWS
4        PRINCIPLES,

5        (B)  THE UNDERSIGNED HEREBY IRREVOCABLY
      SUBMITS TO THE JURISDICTION OF ANY GEORGIA STATE
6        COURT OR UNITED STATES FEDERAL COURT SITTING IN
      THE STATE OF DELAWARE, OVER ANY ACTION OR
7        PROCEEDING ARISING OUT OF OR RELATING TO THIS
      SUBSCRIPTION AGREEMENT OR ANY AGREEMENT
8        CONTEMPLATED HEREBY, AND

9        (C)  THE UNDERSIGNED HEREBY IRREVOCABLY
      AGREES THAT ALL CLAIMS IN RESPECT OF SUCH
10        ACTION OR PROCEEDING SHALL BE HEARD AND
      DETERMINED IN SUCH GEORGIA STATE COURT OR
11        FEDERAL COURT.  THE UNDERSIGNED FURTHER WAIVES
      ANY OBJECTION TO VENUE IN SUCH COURT AND ANY
12        OBJECTION TO AN ACTION OR PROCEEDING IN SUCH
      COURT ON THE BASIS OF A NON-CONVENIENT FORUM.
13        THE UNDERSIGNED FURTHER AGREES THAT ANY
      ACTION OR PROCEEDING BROUGHT AGAINST THE
14        COMPANY SHALL BE BROUGHT IN SUCH COURTS.

15  LaDuca Decl., Ex. A, § 4.2 of the Subscription Agreement.  Subsection 4.2(A) of the

16  Subscription Agreement thus contains a mandatory choice of law provision instructing that

17  Georgia law shall apply without reference to choice of law principles, while subsection 4.2(C)

18  contains the choice of forum provision Defendants seek to enforce.  *Id.*

19      **C.**  **The Stockholders Agreement**

20          In connection with Duke Advantage's purchase of CorMatrix stock, Duke

21  Advantage became a party to a stockholder's agreement with CorMatrix ("Stockholders

22  Agreement"), which the Defendants' originally made with Purdue Research Foundation, Inc. and

23  which binds subsequent purchasers of CorMatrix stock.  LaDuca Decl., Ex. B.  At the time

24  Thomas faxed the Subscription Agreement to Duke Advantage on February 9, 2004, it appears

25  that he meant to include with it a copy of the Stockholders Agreement, but inadvertently sent a

26  stock purchase agreement between Purdue Research Foundation, Inc. and CorMatrix.  LaDuca

27  Decl., ¶6, Ex. A.  On the cover sheet of the February 9, 2004 fax, Thomas wrote, "[a]lso attached

28  is the stockholders agreement related to Purdue which you by becoming a shareholder of

               - 3 -

1  CorMatrix become a party to as well." LaDuca Decl., ¶ 6, Ex. A. Thomas sent the Stockholders

2  Agreement to Duke Advantage's counsel, Linsey White, the next day on February 10, 2004.

3  LaDuca Decl.¶7, Ex. B.

4           By its own terms, as well as the admission of CorMatrix's CFO in the cover sheet

5  of the February 9, 2004 fax cover sheet, the Stockholders Agreement is binding upon the Plaintiff

6  Duke Advantage as a purchaser of CorMatrix stock. The Stockholders Agreement provides for

7  the rights, duties and responsibilities of holders of CorMatrix stock, and CorMatrix as the issuer

8  of that stock, with respect to ownership, transfer and other actions. The introduction to the

9  Stockholder's Agreement states:

10          This Stockholders Agreement (this "Agreement") is made on
            November 16, 2001, by and among CorMatrix Cardiovascular, a
11          Georgia corporation, with its principal offices located at 14980 East
            Bluff Road, Alpharetta, Georgia 30004 ("Licensee"), Purdue
12          Research Foundation, Inc., an Indiana nonprofit corporation with
            offices located at 1291 Cumberland Avenue, West Lafayette,
13          Indiana ("PRF"), the persons designated as Additional Investors in
            Schedule A ("the Additional Investors") and the individuals
14          designated as Founding Stockholders in Schedule A ("the Founding
            Stockholders") (PRF, the Additional Investors and the Founding
15          Stockholders, **together with any other person or entity which
            may become a stockholder of the Licensee hereafter are, for so**
16          **long as they are stockholders of Licensee, collectively referred
            to in this Agreement as the "Stockholders" or individual**
17          **"Stockholder.")**

18  LaDuca Decl., Ex. B (emphasis added). In addition, Section 5.5 of the Stockholders Agreement

19  is entitled "Subsequent Stockholders to Become Bound." It states in part:

20          Any person or entity who subsequently becomes a Stockholder of
            License (including holders of options or warrants to acquire
21          common stock upon the exercise of such option or warrant, as the
            case may be) shall be bound by all the terms and provisions of, and
22          shall be entitled to all the benefits and privileges of this Agreement.

23  *Id*. The agreement goes on to set forth the limited rights of "Stockholders," such as Duke

24  Advantage to sell, transfer and otherwise dispose of their shares. *See Id*. at Articles 2-4.

25          The Stockholders Agreement also contains choice of law and forum provisions

26  that conflict with those found in the Subscription Agreement. Section 5.8 of the Stockholders

27  Agreement, entitled "Governing Law and Jurisdiction," states:

28          This Agreement shall be governed by and interpreted under the

laws of the State of Indiana, without giving effect to the principles of conflicts of law of any jurisdiction.  In the event that a party to this Agreement perceives the existence of a dispute with the other party concerning any right or duty provided for in this Agreement, the parties will, as soon as practicable, confer in an attempt to resolve the dispute.  If the parties are unable to resolve the dispute amicably, then the parties hereby submit to the exclusive jurisdiction of and venue in the state and federal courts located in Tippecanoe County, Indiana with respect to any and all disputes concerning the subject, or arising out, of this Agreement, and such courts shall have sole and exclusive jurisdiction and venue over such disputes.

*Id.* at § 5.8.

### D.    Defendants Have Extensive Ties to This Forum

In addition to selling securities within California, which specifically gave rise to the present dispute between the parties, Defendants have extensive contacts with California. CorMatrix maintains both operations and an office in Sunnyvale, California.  The California address for this facility is the only one currently listed on CorMatrix's website at http://www. cormatrix.com, indicating the strong likelihood that Sunnyvale, California represents CorMatrix's principal place of business.  Before moving to its Sunnyvale facility, CorMatrix ran its operations out of facilities in Santa Cruz, California.  The individual defendants traveled approximately six times each year to California to solicit additional investors, attend conferences, observe CorMatrix's operations, meet with medical professionals, and promote CorMatrix's products. LaDuca Decl., ¶ 8.

In contrast, Defendants' only ties to Georgia are that CorMatrix is incorporated there, and two of the three individually named executives of CorMatrix live in Georgia.  In fact, the corporate address of CorMatrix is the home address for CorMatrix's CEO, David Camp. LaDuca is unaware that CorMatrix has any employees in Georgia.  LaDuca Decl., ¶ 9.

Duke Advantage has no significant ties or contacts with Georgia other than through its investment in CorMatrix, which was solicited in California.  LaDuca has only been to Georgia twice in connection with Duke Advantage business, once to attend a Shareholders Meeting in late 2006, and again after this litigation commenced to attend another Shareholder's Meeting in late June of this year.  Duke Advantage does not carry out any activities in Georgia,

- 5 -

1   and LaDuca has no plans to be in Georgia again in the future in connection with any Duke

2   Advantage business.  LaDuca Decl. ¶ 10

3   **III.    ARGUMENT**

4         **A.    Legal Standard**

5              In ruling on a Rule 12(b)(3) motion, the court must draw all reasonable inferences

6   and resolve all factual conflicts in favor of the party seeking to avoid enforcement of the clause.

7   *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).  In the Ninth Circuit,

8   federal law applies to forum selection clauses.  *Manetti-Farrow, Inc.* 858 F.2d  at 513.

9   Additionally, "because the enforcement of a forum clause necessarily entails interpretation of the

10  clause before it can be enforced, federal law also applies to interpretation of forum selection

11  clauses." *Id.*

12             A forum selection clause is "prima facie valid and should be enforced unless

13  enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The*

14  *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  Enforcement is "unreasonable" where it

15  would "contravene a strong public policy of the forum in which suit is brought, whether declared

16  by statute or by judicial decision." *Id.* at 15.  While the procedure in federal court is less clear,

17  once a party seeking to avoid enforcement of a forum selection clause asserts that public policy

18  expressed in a statutory scheme prohibits the parties from choosing a non-California forum and

19  waiving California law, the burden is on the defendant to show that litigation in the contract

20  forum will not diminish any of the plaintiff's rights under California law.  *Wimsatt v. Beverly*

21  *Hills Weight Loss Clinics Int'l Inc.*, 32 Cal.App.4th 1511, 1523 (1995).

22        **B.    The Forum Selection Clause Defendants Seek to Enforce is Void Under**
          **California Law.  As a Result, There is No Valid Agreement for the Court to**
23        **Enforce**

24             The California state legislature has enacted an anti-waiver provision of the state's

25  securities laws codified in California Corporations Code Section 25701, mandating that any

26  agreement that would result in the evasion of California's securities laws are null and void.

27  Corporations Code Section 25701 provides that "[a]ny condition, stipulation or provision

28  purporting to bind any person acquiring any security to waive compliance with any provision of

1    this law or any rule or order hereunder is void." Cal. Corp. Code § 25701.

2                 Here, the joint operation of the choice of forum and choice of law clauses that

3    Defendants seek to enforce would effectively deprive California of the ability to regulate the

4    Defendants' improper sale of securities within this state, and deny Duke Advantage the

5    protections afforded by California law. The choice of forum and choice of law provisions in the

6    Subscription Agreement mandate that cases be heard in a Georgia state or Delaware federal court

7    applying Georgia law without reference to choice of law principles. Defendants argue that

8    "[b]ecause all of Plaintiffs claims are intertwined with its investment in CorMatrix, the Court will

9    have to interpret and analyze the Subscription Agreement to determine whether the causes of

10   action are applicable to any of the defendants." Defendants' Memorandum of Points and

11   Authorities in Support of Motion to Dismiss for Improper Venue, at 9:4-6. By Defendants own

12   logic and the terms of the choice of law provision in the Subscription Agreement, were this action

13   brought in a Georgia or Delaware court, that court would be powerless to apply California law to

14   a dispute over the sale of securities in that state. Such a contractual restriction violates California

15   law.

16                 In *Hall v. Superior Court*, 150 Cal. App.3d 411 (1983), the California Court of

17   Appeals dealt with a similar situation. The court refused to enforce a forum selection clause and

18   accompanying choice of law provision because it held that the provisions violated the anti-waiver

19   provisions of Corporations Code Section 25701 and the state's public policy of protection of

20   securities investors and potential evasion of California securities law. As in this case, the

21   defendants in *Hall* negotiated and sold securities within this state, and obtained an agreement

22   from the plaintiff to litigate any related disputes in an out-of-court state applying non-California

23   law. The court held that "[b]ecause the choice of law provision in the same agreement violates

24   the Corporations Code and the public policy of this state, we hold enforcement of the choice of

25   forum provision is unreasonable." *Hall*, 150 Cal.App.3d at 413. The court explained that

26   "Section 25701 applies where there is an offer to sell or buy securities in California," and held

27   that:

28                 California's policy to protect securities investors, without more,

would probably justify denial of enforcement of the choice of
forum provision, although a failure to do so might not constitute an
abuse of discretion; but [California Corporations Code] Section
25701, which renders void any provision purporting to waive or
evade the Corporate Securities Law, removes that discretion and
compels denial of enforcement.

*Hall*, 150 Cal.App.3d at 417; 418. While this Court is not bound by California procedural law,

the *Hall* case illustrates that as a matter of substantive law the choice of forum clause Defendants'

seek to enforce was void under Corporations Code 25701 *ab initio*. As such, there is no valid

agreement for the Court to enforce, and Defendants' motion must be denied.

C. **Enforcing the Forum Selection Clause in the Subscription Agreement would Violate Strong California Public Policy Favoring Application of The State's Laws to Protect California Purchasers of Securities**

Enforcement of the forum selection and choice of law provisions in the

Subscription Agreement would also violate strong California public policy, and render

enforcement of the clause "unreasonable" under the factors elucidated in *The Bremen*. California

has a strong public policy favoring application of its securities laws to cases involving the sale or

purchase of securities within its borders. *Hall*, 150 Cal. App.3d at 417 ("California's policy is to

protect the public from fraud and deception in securities transactions").[1] California's Corporate

Securities Law of 1968 "was enacted to effectuate this policy by regulating securities transactions

in California and providing statutory remedies for violations of the Corporate Code, in addition to

those available under common law." *Id.* The protections afforded to California residents by the

Corporate Securities Law of 1968 extend to limited liability companies such as Duke Advantage,

as well as natural persons. Cal. Corp. Code § 25013 ("'[p]ersons' means an individual, a

corporation, a partnership, a limited liability company . . .").

An anti-waiver provision expressing the state's public policy was also at issue in

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000). In *Jones,* the Ninth Circuit upheld

the trial court's refusal to enforce a forum selection clause on the grounds that enforcement would

contravene California's strong public policy against enforcing such clauses in franchise

agreements. The court held that the state's public policy was expressed in a statutory anti-wavier

---

[1] *Hall* has been cited with approval by the Supreme Court of California in the seminal case *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464 (1992).

1    provision, explaining that California Business and Professions Code Section 20040.5 (which

2    voids forum selection clauses involving franchise businesses operating within the state)

3    "expresses a strong public policy of the state of California to protect California franchisees from

4    the expense, inconvenience, and possible prejudice of litigating in a non-California venue."

5    *Jones*, 211 F.3d at 498.  Here, Corporations Code Section 25701 expresses a similarly strong

6    public policy to protect California residents by ensuring application of "California law and its

7    concomitant nuances" to any disputes arising out of the purchase or sale of securities within the

8    state.  *Hall*, 150 Cal.App.3d at 418.

9            The undisputed facts indicate that an offer to sell and an actual sale of securities

10   was made by the Defendants within this state.  Defendants offered securities and negotiated for

11   their sale via interstate phone calls to California, and the securities were delivered to Duke

12   Advantage in California.  *See* Cal. Corp. Code § 25008(b) (defining what constitutes an offer of

13   sale and sale within the meaning of the Corporate Securities Law of 1968).  Duke Advantage now

14   alleges fraud in connection with that sale.  Should  the choice of forum and choice of law

15   provisions found in Section 4.2 of the parties' Subscription Agreement be enforced, Duke

16   Advantage could effectively be deprived of substantive rights under California law that the state

17   legislature has declared cannot be waived.  Via enactment of an anti-waiver statute, California has

18   "declared by statute" its strong public policy of protecting California purchasers of  securities

19   through application of California law despite agreements such as the forum selection provision at

20   issue here.  *See The Bremen*, 407 U.S. at 15.  As set forth in Corporations Code Section 25701, a

21   seller of securities cannot avoid California law by agreeing with a purchaser to litigate in out-of-

22   state courts applying non-California law.  While Duke Advantage has not yet stated claims under

23   California's Corporate Securities Law of 1968, it has plead facts sufficient to state a claim under

24   Section 25400(d) of that law.  *See* Complaint at ¶¶ 19-36.  Enforcement of the choice of law and

25   choice of forum clauses at issue would deprive Duke Advantage of the ability to amend its

26   complaint to state such a claim, as is liberally permitted by the Federal Rules of Civil Procedure.

27   In addition, California Corporations Code Section 25701 and the public policy it reflects takes

28   effect prior to the initiation of any litigation, before any claims are made, at the time a potentially

1    violating agreement is created.

2         Because "a contractual choice of forum clause should be held unenforceable if

3    enforcement would contravene a strong public policy of the forum in which suit is brought," the

4    Court should refrain from enforcing the clause at issue here. *The Bremen*, 407 U.S. at 15.

5    **D.    The Policy Behind Enforcement of Forum Selection Clauses is Frustrated by
           Conflicting Forum Selection Clauses**

6         Forum selection clauses should provide parties to a contract with a measure of

7    orderliness and predictability. As the Supreme Court stated in *Carnival Cruise Lines, Inc v.*

8    *Shute*, 499 U.S. 585, 594 (1991), "[a] clause establishing *ex ante* the forum for dispute resolution

9    has the salutary effect of dispelling any confusion about where suits arising from the contract

10   must be brought and defended." Here, the existence of conflicting choice of forum and choice of

11   law provisions in separate agreements exacerbates, rather than dispels, such confusion. Indeed,

12   the objectives of the provisions themselves are utterly unclear.

13        The two agreements set forth three different forums and two different sets of

14   governing law, creating a confusing mix of jurisdictional considerations. Section 4.2 of the

15   Subscription Agreement contains choice of law and forum provisions requiring that any action

16   arising out of or related to the agreement be brought in Georgia state or Delaware federal court,

17   applying Georgia law. Section 5.8 of the Stockholders Agreement, however, provides that

18   disputes between parties to the agreement (which by virtue of Section 5.5 includes Duke

19   Advantage) must be brought in Indiana state or federal courts, applying Indiana law. Duke

20   Advantage has made claims that implicate both agreements, namely breach of fiduciary duty and

21   accounting inspection claims involving the rights of a stockholder, as well as claim for fraudulent

22   inducement to purchase securities. Both agreements are thus related to Duke Advantage's

23   investment in CorMatrix and status as a CorMatrix stockholder. Both forum selection provisions

24   use mandatory and exclusive language and, by their own admission, the Defendants have

25   acknowledged that both agreements are binding upon Duke Advantage. In the face of competing

26   and contradictory forum selection clauses, the public policy behind enforcement of such clauses

27   is frustrated. Faced with the confusion created by these contradictory provisions, the Court

28

---

PLAINTIFF DUKE ADVANTAGE'S OPPOSITION
                                                    TO DEFENDANTS' MOTION TO DISMISS
                                                    (CASE NO.  C-07-2950 RMW)

1  should default to the plaintiff's choice of forum.  S*ee Ravelo Monegro v. Rosa*, 211 F.3d 509, 513

2  (9th Cir. 2000) (noting in general the strong presumption in favor of a plaintiff's forum choice).

3            **E.      Venue is Proper in the Northern District of California**

4                  Venue in this forum is proper because the parties have strong ties to this forum,

5  and the actions giving rise to the present dispute largely took place within the Northern District of

6  California.  The transaction giving rise to the present dispute occurred in California.  And as set

7  forth in Section II, the Defendants have extensive ties to California.

8  **IV.     CONCLUSION**

9            For the foregoing reasons, Plaintiff Duke Advantage respectfully requests that the Court

10  deny Defendants' Motion to Dismiss.

11

12

13  Dated: July 13, 2007                             ORRICK, HERRINGTON & SUTCLIFFE LLP

14
                                                    _____
15                                                       */s/ Christian N. Brown*
                                                         Christian N. Brown
16                                                       Attorneys for Plaintiff
                                                         DUKE ADVANTAGE, LLC
17

18

19

20

21

22

23

24

25

26

27

28