# EXHIBIT B

FEB.-10'04(TUE) 11:38                    TEL:1 770 424 8336              P. 001

## STOCKHOLDERS AGREEMENT

This Stockholders Agreement (this "*Agreement*") is made on November 16, 2001, by and among CorMatrix Cardiovascular, a Georgia corporation, with its principal offices located at 14980 East Bluff Road, Alpharetta, Georgia 30004 ("*Licensee*"), Purdue Research Foundation, Inc., an Indiana nonprofit corporation with offices located at 1291 Cumberland Avenue, West Lafayette, Indiana ("*PRF*"), the persons designated as Additional Investors in Schedule A (the "*Additional Investors*") and the individuals designated as Founding Stockholders in Schedule A (the "*Founding Stockholders*") (PRF, the Additional Investors and the Founding Stockholders, together with any other person or entity which may become a stockholder of the Licensee hereafter are, for so long as they are stockholders of Licensee, collectively referred to in this Agreement as the "*Stockholders*" or individually a "*Stockholder*.")

### BACKGROUND

A.  Concurrently with the execution of this Agreement, PRF is entering into a License Agreement with Licensee dated November 16, 2001 (the "*License Agreement*"), whereby PRF is licensing to Licensee certain technology owned by PRF;

B.  Concurrently with the execution of this Agreement, PRF is entering into a Stock Purchase Agreement with Licensee dated November 16, 2001 (the "*Stock Purchase Agreement*") whereby in partial consideration for the execution and delivery of the License Agreement by PRF, Licensee has agreed to issue to PRF certain shares of Licensee's capital stock;

C.  In partial consideration for the execution and delivery by PRF of the License Agreement, the parties have agreed to enter into this Stockholders Agreement; and

D.  The parties have determined that it is in the best interests of Licensee and the Stockholders to provide for certain rights and restrictions on the future disposition of Licensee's common stock, par value $.001 per share (the "*Common Stock*"), and various other matters set forth in this Agreement.

NOW, THEREFORE, in consideration of the agreements and mutual promises and covenants set forth in this Agreement, the parties hereto, intending to be legally bound hereby, agree as follows:

### ARTICLE 1 – RESTRICTIONS ON TRANSFER OF SHARES

1.1 Restrictions on Stockholders. Until such time as Licensee's securities are the subject of a Qualified Initial Public Offering (as hereinafter defined), or as expressly provided in this Agreement, no Stockholder shall sell, assign, transfer, give, bequeath, devise, donate or otherwise dispose of, or pledge, deposit or otherwise encumber, in any way or manner whatsoever, whether voluntary or involuntary (all of the foregoing hereinafter referred to as "transfer"), any legal or beneficial interest in any of the shares of Licensee's capital stock (collectively, the "*Shares*") now or hereafter owned (of record or beneficially) by such

CorMatrix.stockholders.doc

Post-it® brand fax transmittal memo 7671 | # of pages ▶
To: LINSEY WHITE | From: JOHN THOMAS
Co. | Co.
Dept. | Phone # 770-514-0177
                                                    11/16/01

FEB.-10' 04 (TUE) 11:38                    TEL:1 773 424 9256                    P. 002

Stockholder except as expressly provided in this Agreement and in accordance with its terms and conditions.

    1.2 <u>Certain Excluded Transfers</u>. The provisions of Article 2 and Article 3 of this Agreement shall not apply to the following transfer of shares by the Stockholders:

    (a) transfers of Shares from one Stockholder to another;

    (b) gifts, bequests or transfers by any individual Stockholder to spouses, parents, siblings, children, nieces, nephews, grandchildren, trusts for the benefit of any one or more of the foregoing or entities controlled by any one or more of the foregoing;

    (c) transfers from an estate of any individual Stockholder to any spouse or relative of the decedent or any trust for the benefit of any one or more of the foregoing;

    (d) transfers by any Stockholder to any affiliate, which shall include, as to any limited partnership, the general partners or limited partners of such partnership; and

    (e) in the case of transfers by PRF, transfers by PRF to any employee or former employee of PRF in connection with PRF's internal patent policy.

ARTICLE 2 – STOCKHOLDER'S LIMITED RIGHT TO DISPOSE OF SHARES

    2.1 <u>Offer to Sell Shares</u>. Except as otherwise provided in the Stock Purchase Agreement and Article 1 and Article 3 of this Agreement, if any Stockholder shall at any time desire to sell all or any part of such Stockholder's Shares, such Stockholder (the "*Selling Stockholder*") shall first prepare a written offer (the "*Offer*") to sell all, but not less than all, of such portion of the Shares which such Stockholder desires to offer for sale (the "*Offered Shares*") setting forth the proposed date of the sale, the proposed price per Share, and the other terms and conditions upon which the sale is proposed to be made. Such notice shall also specify whether a Third Party Purchaser (as hereinafter defined) has made an offer to acquire such Shares. The Selling Stockholder shall then transmit a copy of the Offer to Licensee. Within two (2) business days of receipt of the Offer, Licensee shall transmit a copy of the Offer to the Stockholders other than the Selling Stockholder.

    2.2 <u>Option of Licensee</u>. Transmittal of the Offer to Licensee by the Selling Stockholder shall constitute an offer by the Selling Stockholder to sell the Selling Stockholder's Offered Shares to Licensee at the price and upon the terms set forth in the Offer. For a period of fifteen (15) days after the submission of the Offer to Licensee, Licensee shall have the option, exercisable by written notice to the Selling Stockholder with a copy to each of the other Stockholders, to accept the Selling Stockholder's Offer as to all or any part of the Selling Stockholder's Offered Shares. Such notice shall state the number of Shares Licensee will purchase, if any, and the number of Offered Shares available to be purchased.

    2.3 <u>Option of Offeree Stockholders</u>. In the event that Licensee does not exercise its option with respect to any or all of the Offered Shares in accordance with Section 2.2, the Selling Stockholder, upon notice from Licensee of Licensee's decision not to accept the Offer as to any or all of the Offered Shares (or upon expiration of the fifteen-day option period referred to

FEB.-10' 04 (TUE) 11:39                    TEL:1 770 424 8236                    P. 003

in Section 2.2 if Licensee fails to give notice as aforesaid), shall be deemed to have offered in writing to sell all, but not less than all, of its remaining Offered Shares (those not purchased by Licensee) to the Stockholders (other than the Selling Stockholder), as a group ("*Offeree Stockholders*") at the price and upon the terms set forth in the Offer. For a period of fifteen (15) days after such Offer to the Offeree Stockholders, the Offeree Stockholders shall have the option, exercisable by written notice to the Selling Stockholder with a copy to Licensee and to each of the other Offeree Stockholders, to accept the Offer as to the remaining Offered Shares. Each Offeree Stockholder who exercises this option shall agree, by doing so, to purchase that proportionate part of the remaining Offered Shares which the number of Shares owned by such Offeree Stockholder bears to the total number of Shares owned by all Offeree Stockholders (or in such other proportions as the Offeree Stockholders may agree among themselves). In the event that one or more of the Offeree Stockholders does not exercise its option in accordance with Section 2.3, the Offeree Stockholders who exercised their options pursuant to Section 2.3 shall have a further option for a period of five (5) additional days following the expiration of the fifteen-day period set forth in Section 2.3 to accept the Offer as to the then remaining Offered Shares, and each such Offeree Stockholder who exercises this further option shall agree, by doing so, to purchase that proportionate part of the then remaining Offered Shares, which the number of Shares owned by such Offeree Stockholder bears to the total number of Shares owned by all of the Offeree Stockholders exercising their option pursuant to this Section 2.3 (or in such other proportions as such Offeree Stockholders may agree among themselves).

2.4 Sale to Third Party Purchaser. If, at the end of the option periods described in Sections 2.2 and 2.3 (the "*Option Periods*"), options have not been exercised by Licensee and/or the Offeree Stockholders to purchase all of the Offered Shares, then the Licensee and the Offeree Stockholders shall not have the right to purchase any of the Offered Shares and the Selling Stockholder shall be free, subject to the co-sale provisions of Article 3, for a period of thirty (30) days thereafter to sell all of the Offered Shares to a third party purchaser (the "*Third Party Purchaser*") at the price and upon the terms and conditions set forth in the Offer. If such Offered Shares are not so sold within the aforesaid thirty-day period, then the Selling Stockholder shall not be permitted to sell such Offered Shares without again complying with this Article 2.

### ARTICLE 3 – CO-SALE PROVISIONS

3.1 Notice of Third-Party Offer. Within five (5) days of the end of the Option Periods, if there are any Offered Shares available for sale to the Third Party Purchaser, the Selling Stockholder shall submit a written notice (the "*Co-Sale Notice*") to the Offeree Stockholders disclosing the number of Offered Shares proposed to be sold and the total number of Shares owned by the Selling Stockholder.

3.2 Right of Participation in Sales.

(a) Co-Sale Right. Upon receipt of a Co-Sale Notice from the Selling Stockholder, each Offeree Stockholder shall have the right to sell to the Third Party Purchaser, at the same price per share and on the same terms and conditions set forth in the Offer, such number of Shares held by such Offeree Stockholder equal to the Offered Shares multiplied by a fraction, the numerator of which is the aggregate number of Shares held by such Offeree

Stockholder and the denominator of which is the sum of: (i) all Shares held by such Selling Stockholder (excluding those, if any, Shares designated for sale to Licensee and the Offeree Stockholders pursuant to Article 2); and (ii) all of the Shares held by any Offeree Stockholder or Offeree Stockholders electing to participate in such sale to the Third Party Purchaser (such Stockholders being "*Participating Stockholders*"); provided, however, that the maximum number of shares which the Participating Shareholders may include in such sale shall not exceed, and the minimum number of shares which the Selling Shareholder may include in such sale shall be not less than, fifty percent (50%) of the total number of shares to be purchased by the purchase offeror.

(b) <u>Notice of Intent to Participate</u>. If an Offeree Stockholder wishes to participate in any sale under this Section 3.2, then such Offeree Stockholder shall notify the Selling Stockholder in writing of such intention as soon as practicable after such Offeree Stockholder's receipt of the Co-Sale Notice made pursuant to Section 3.1, and in any event within ten (10) days after the date of such Co-Sale Notice has been delivered. Such notification shall be delivered in person or by facsimile to the Selling Stockholder.

(c) <u>Sale of Co-Sale Shares</u>. The Selling Stockholder and the Participating Stockholders shall sell to the Third Party Purchaser all, or, at the option of the Third Party Purchaser, any part, of the Shares proposed to be sold by them at not less than the price and upon other terms and conditions, if any, not more favorable to the Third Party Purchaser than those in the Co-Sale Notice provided by the Selling Stockholder under Section above; provided that any purchase of less than all of such shares by the Third Party Purchaser shall be made from the Selling Stockholder and the Participating Stockholders pro rata based upon the relative amount of the Shares that the Selling Stockholder and each of the Participating Stockholders is otherwise entitled to sell pursuant to Section 3.2(a).

ARTICLE 4 – PRICE, TERMS AND SETTLEMENT

4.1 <u>Purchase Price</u>. The purchase price per Share and the terms of payment shall be the price per Share contained in the Offer.

4.2 <u>Time; Date; Location</u>. Settlement for the purchase of Shares by Licensee or by a Stockholder pursuant to the provisions of Article 2, shall be made within thirty (30) days following the date of exercise of the last option exercised. All settlements for the purchase and sale of Shares shall, unless otherwise agreed to by all of the purchasers and sellers, be held at the principal executive offices of Licensee during regular business hours. The precise date and hour of settlement shall be fixed by the purchaser or purchasers (within the time limits proscribed in this Agreement), or in the event the purchasers fail to agree, by the President of Licensee, by notice in writing to the seller given at least five (5) days in advance of the settlement date specified.

4.3 <u>Certificates</u>. At settlement, the stock certificate or certificates representing the Shares being sold shall be delivered by the seller to the purchaser or purchasers, duly endorsed for transfer or with executed stock powers attached, with any necessary documentary and transfer tax stamps affixed by the seller, free and clear of all liens, claims and encumbrances except for the terms of this Stockholders Agreement.

the extent permissible under the applicable statutes and rules of procedure, a temporary injunction may be granted immediately upon the commencement of any such suit and without notice.

5.5 <u>Subsequent Stockholders to Become Bound</u>. Any person or entity who subsequently becomes a Stockholder of Licensee (including holders of options or warrants to acquire Common Stock upon the exercise of such option or warrant, as the case may be) shall be bound by all of the terms and provisions of, and shall be entitled to all the benefits and privileges of this Agreement. Before any person or entity not a party to this Agreement, including any person or entity to whom transfers of Shares may be made hereunder, may be entitled to become a Stockholder of Licensee, such person or entity shall be required first to execute and deliver to Licensee an agreement pursuant to which such person or entity agrees to be bound by all of the terms and conditions of this Agreement (as it may have then been amended), and the failure of any such person or entity to execute such agreement shall preclude such person or entity from becoming a Stockholder of Licensee.

5.6 <u>Amendment, Modification and Termination</u>. This Agreement may be amended, modified or terminated, or any provision or requirement of this Agreement waived, at any time by an agreement in writing among Licensee, PRF, the holders of a majority of outstanding Shares held by Additional Investors, and a majority of outstanding shares held by Founders. Any such amendment or waiver shall be effective with respect to all parties to this Agreement.

5.7 <u>No Waiver</u>. No waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other or subsequent breach or condition, whether of like or different nature.

5.8 <u>Governing Law and Jurisdiction</u>. This Agreement shall be governed by and interpreted under the laws of the State of Indiana, without giving effect to the principles of conflicts of law of any jurisdiction. In the event that a party to this Agreement perceives the existence of a dispute with the other party concerning any right or duty provided for in this Agreement, the parties will, as soon as practicable, confer in an attempt to resolve the dispute. If the parties are unable to resolve such dispute amicably, then the parties hereby submit to the exclusive jurisdiction of and venue in the state and federal courts located in Tippecanoe County, Indiana with respect to any and all disputes concerning the subject of, or arising out of, this Agreement, and such courts shall be the sole and exclusive jurisdiction and venue for any such disputes.

5.9 <u>Notices</u>. All notices, requests, consents and other communications hereunder shall be in writing and shall be delivered in person or sent overnight delivery by Federal Express or via facsimile, and shall be deemed to have been given when hand delivered, one (1) business day after mailing when sent by overnight courier (e.g., Federal Express or Express Mail) or upon receipt by successfully transmitted by facsimile and confirmed by facsimile report, as follows (provided that notice of change of address shall be deemed given only when received):

FEB. -10' 04(TUE) 11:40                        TEL:1 770 424 3236            P. 006

If to Licensee, to:

   David Camp
   CorMatrix Cardiovascular, Inc.
   14980 East Bluff Road.
   Alpharetta, GA 30004
   Fax: 770-751-3757

If to PRF, to:

   Lisa Kingrila
   Office of Technology Commercialization
   Purdue Research Foundation, Inc.
   1291 Cumberland Avenue
   West Lafayette, Indiana 47906
   Fax: 765-496-1277

With a required copy to:

   General Counsel
   Thomas B. Parent
   Stuart & Branigin
   P.O. Box 1010
   Lafayette, IN 47902-1010
   Facsimile: (765) 742-5871

or to such other names or addresses as a party to this Agreement, as the case may be, shall designate by notice to each other person entitled to receive notices in the manner specified in this Section 5.9.

5.10   **Binding Nature of Agreement and No Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns, except that no party may assign or transfer its rights or obligations under this Agreement without the prior written consent of the other parties hereto, except by means of transfers permitted by Article 1 or Article 2.

5.11   **Counterparts, Headings and Exhibits.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The headings used in this Agreement are for convenience only and are not to be considered in construing or interpreting any term or provision of this Agreement. All Schedules and Exhibits hereto are hereby incorporated in this Agreement and made a part of this Agreement.

5.12   **Integration.** This Agreement, the Stock Purchase Agreement and the License Agreement embody the entire agreement and understanding among the parties hereto and thereto supersede all prior agreements and understandings relating to the subject matter hereof or thereof.

5.13   **Severability.** If any provision of this Agreement shall be held to be illegal, invalid or unenforceable, then such illegality, invalidity or unenforceability shall attach only to such provision and shall not in any manner affect or render illegal, invalid or

CorMatrix.stockholders.doc              -7-                       11/14/01

unenforceable any other provision of this Agreement, and this Agreement shall be carried out as if any such illegal, invalid or unenforceable provision were not contained in this Agreement.

    5.14  **Number of Days**. In computing the number of days for purposes of this Agreement, all days shall be counted, including Saturdays, Sundays and holidays; provided that if the final day of any time period falls on a Saturday, Sunday or holiday on which Federal banks are or may elect to be closed, then the final day shall be deemed to be the next day which is not a Saturday, Sunday or such holiday.

*(signature page follows)*

FEB. -10' 04(TUE) 11:40　　　　　　　　　TEL:1 770 424 8236　　　　P.009

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement on the date first above written.

CORMATRIX CARDIOVASCULAR, INC.

By: _[signature]_
Name: DAVID B. CAMP
Title: PRESIDENT/CEO

THE STOCKHOLDERS

PURDUE RESEARCH FOUNDATION, INC.

By: _[signature]_
Name: MARTIN C. JISCHKE
Title: PRESIDENT

CORMATRIX HOLDINGS, INC.

By: _[signature]_
Name: DAVID B. CAMP
Title: PRESIDENT/CEO

Duke Advantage LLC
by: _[signature]_
Name: Robert LaDuca
Title: Manager

CorMatrix.stockholders.doc　　　9　　　　　　11/16/01

FEB. -10' 04 (TUE) 11:41          TEL:1 770 424 8236          P. 009

## SCHEDULE A

1. **Additional Investors**

None

2. **Founding Stockholders**

CorMatrix Holdings, Inc.          97,500 shares

CorMatrix.stockholders.doc          10          (1/16/02)