**EXHIBIT A**

# OFFICIAL CODE OF GEORGIA ANNOTATED

## 2006 Supplement

Including Acts of the 2006 Regular Session of the General Assembly

*Prepared by*

The Code Revision Commission

The Office of Legislative Counsel

*and*

The Editorial Staff of LexisNexis®



Library

JUL 2 7 2006

Kilpatrick Stockton LLP
Atlanta

Published Under Authority of the State of Georgia

## Volume 8

### 2000 Edition

Title 10. Commerce and Trade

Including Annotations to the Georgia Reports
and the Georgia Appeals Reports

**Place in Pocket of Corresponding Volume of Main Set**

LexisNexis®
Charlottesville, Virginia

EXHIBIT A

26; Ga. L. 1979, p. 1296, § 4; Ga. L. 1982, p. 3, § 10; Ga. L. 1986, p. 1559, § 2; Ga. L. 1987, p. 191, § 9; Ga. L. 1998, p. 1617, § 4; Ga. L. 2002, p. 792, § 3.)

**The 2002 amendment,** effective July 1, 2002, substituted "; or" for a period at the end of subparagraph (11)(F) and added paragraph (12).

**Law reviews.** — For note on the 2002 amendment of this section, see 19 Ga. St. U.L. Rev. 54 (2002).

### 10-5-12. Unlawful practices.

(a) It shall be unlawful for any person:

(1) To offer to sell or to sell any security in violation of Code Section 10-5-3, 10-5-5, or 10-5-19 or any rule, regulation, or order promulgated or issued by the commissioner under this chapter;

(2) In connection with an offer to sell, sale, offer to purchase, or purchase of any security, directly or indirectly:

(A) To employ a device, scheme, or artifice to defraud;

(B) To make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(C) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon a person;

(3) To offer or sell any security:

(A) Registered under subsection (b) of Code Section 10-5-5 by means of any prospectus except a prospectus which complies with paragraph (3) of subsection (b) of Code Section 10-5-5;

(B) Registered under subsection (e) of Code Section 10-5-5 by means of any prospectus except a prospectus which complies with paragraph (3) of subsection (e) of Code Section 10-5-5; or

(C) Registered under subsection (f) of Code Section 10-5-5 by means of any prospectus except a prospectus which complies with paragraph (4) of subsection (f) of Code Section 10-5-5; or

(4) In connection with the sale of any securities registered under this chapter:

(A) To make any representation concerning any future sales of securities of the same class by the issuer at a price higher than the current offering price; or

(B) To make any representations as to the future existence of any public market for the securities offered for sale.

EXHIBIT A

(b) It shall be unlawful for any person to make to any prospective purchaser, customer, or client any representation that the filing or effectiveness of a registration statement or the registration of any security under Code Section 10-5-5 or the existence of any exemption for any security or transaction means that the commissioner has passed in any way upon the truth, completeness, or accuracy of such registration statement or the merits of such security or has recommended or given approval to such security or transaction.

(c) It shall be unlawful for any person who:

(1) Is a dealer, limited dealer, salesperson, limited salesperson, investment adviser, federal covered adviser, or investment adviser representative under this chapter;

(2) Is making a notice filing or filing an application for registration as a dealer, limited dealer, salesperson, limited salesperson, investment adviser, or investment adviser representative under this chapter;

(3) Is an issuer which has filed a registration statement or notice filing with respect to securities it intends to issue; or

(4) Is an affiliate of any of the persons described in paragraph (1), (2), or (3) of this subsection

knowingly to cause to be made, in any document filed with the commissioner or in any proceeding under this chapter, any statement which is, at the time it is made and in light of the circumstances under which it is made, false or misleading in any material respect.

(d) Without limiting the general applicability of subsections (a), (b), and (c) of this Code section, it shall be unlawful to:

(1) Quote a fictitious price with respect to a security;

(2) Effect a transaction in a security which involves no change in the beneficial ownership of the security for the purpose of creating a false or misleading appearance of active trading in a security or with respect to the market for the security;

(3) Enter an order for the purchase of a security with the knowledge that an order of substantially the same size and at substantially the same time and price for the sale of the security has been, or will be, entered by or for the same, or affiliated, person for the purpose of creating a false or misleading appearance of active trading in a security or with respect to the market for the security;

(4) Enter an order for the sale of a security with the knowledge that an order at substantially the same time and price for the purchase of the security has been, or will be, entered by or for the same, or affiliated, person for the purpose of creating a false or misleading appearance of active trading in a security or with respect to the market for the security;

EXHIBIT A

(5) Misappropriate, convert, or improperly withhold any funds or other property in connection with an offer or sale of any security; or

(6) Employ any other deceptive or fraudulent device, scheme, or artifice to manipulate the market in a security.

(e) Transactions effected in compliance with the applicable provisions of the Securities Exchange Act of 1934 and the rules and regulations of the Securities and Exchange Commission thereunder shall not be deemed to constitute market manipulation under subsection (d) of this Code section.

(f) It shall be unlawful for any person to transact business within or from this state as an investment adviser or investment adviser representative in violation of Code Section 10-5-3 or any rule, regulation, or order promulgated or issued by the commissioner under this chapter.

(g) It shall be unlawful for any person to hold himself or herself out as, or otherwise represent that he or she is, a "financial planner" or "investment adviser" or use as descriptive of his or her business the term "financial planner" or "investment adviser" or such similar term as may be specified in rules and regulations promulgated by the commissioner unless said person is a certified public accountant, is registered as an investment adviser or investment adviser representative under this chapter, or is a federal covered adviser who has made a notice filing under this chapter. The use of the term "financial planner" or "investment adviser" or a similar term to describe a person's business shall not be used in such a way so as to be deceptive, as that term may be defined in the rules and regulations promulgated by the commissioner.

(h)(1) It shall be unlawful for any investment adviser, federal covered adviser, or investment adviser representative in the course of his or her business as such:

(A) To employ any device, scheme, or artifice to defraud;

(B) To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit.

(2) It shall be unlawful for any investment adviser, federal covered adviser, or investment adviser representative in the course of business to engage in dishonest or unethical practices, as the commissioner may define by rule.

(i) It shall be unlawful for any person registered as an investment adviser or investment adviser representative under this chapter or for any federal covered adviser who has made a notice filing under this chapter to represent or imply in any manner whatsoever that such person has been sponsored, recommended, or approved or that his or her abilities or qualifications have in any respect been passed upon by the State of Georgia or any agency or any officer thereof; provided, however, that this provision

EXHIBIT A

shall not be construed to prohibit a statement that a person is so registered under this chapter if such statement is true in fact and if the effect of such registration is not misrepresented.

(j) Except as may be permitted by rule or order of the commissioner, it shall be unlawful for any investment adviser to enter into, extend, or renew any investment advisory contract unless it provides in writing:

(1) That the investment adviser shall not be compensated on the basis of a share of capital gains upon or capital appreciation of the funds or any portion of the funds of the client; provided, however, that the prohibitions of this paragraph shall not prohibit an investment advisory contract which provides for compensation based on the total value of a fund averaged over a definite period, as of definite dates, or taken as of definite date;

(2) That no assignment of the contract may be made by the investment adviser without the consent of the other party to the contract; and

(3) That the investment adviser, if a partnership, shall notify the other party to the contract of any change in the membership of the partnership within a reasonable time after the change.

(k) The provisions of subsections (h) and (i) of this Code section and paragraph (1) of subsection (j) of this Code section shall be applicable to any certified public accountant who holds himself out as a "financial planner" or "investment adviser."

(l) All records relating to the preparation of financial plans and the giving of investment advice prepared and maintained by a certified public accountant who holds himself out as a "financial planner" or "investment adviser" are subject to reasonable examination by representatives of the commissioner, within or outside this state, as the commissioner deems necessary or appropriate to determine whether any person has violated or is about to violate this chapter or any rule, regulation, or order under this chapter. This provision shall not be construed to require, or authorize the commissioner to require, such certified public accountant to disclose the identity, investments, or affairs of any client of such certified public accountant, except insofar as such disclosure may be necessary or appropriate in a particular proceeding or investigation having as its object the enforcement of this chapter.

(m)(1) In order to prevent fraudulent, deceptive, or manipulative acts or practices, it shall be unlawful for any designated dealer or designated salesman to sell a designated security to, or to effect the purchase of a designated security by, any person unless the transaction is exempt under paragraph (6) of this subsection or, prior to the transaction, (A) the designated dealer and designated salesman, if involved, have approved the person's account for transactions in designated securities in accor-

EXHIBIT A

dance with the procedures set forth in paragraph (2) of this subsection and (B) the designated dealer and designated salesman, if involved, have submitted to the person a risk disclosure document in a form approved by the commissioner and have thereafter received from the person a written agreement to the transaction in compliance with the requirements of paragraph (3) of this subsection.

(2) In order to approve a person's account for transactions in designated securities, the designated dealer or designated salesman must:

(A) Obtain from the person information concerning the person's financial situation (including but not limited to net worth and annual income), investment experience, and investment objectives;

(B) Reasonably determine, based on the information required by subparagraph (A) of this paragraph and any other information known by the dealer or salesman, that transactions in designated securities are suitable for the person and that the person (or the person's independent adviser in these transactions) has sufficient knowledge and experience in financial matters, such that the person (or adviser) reasonably may be expected to be capable of evaluating the risks of transactions in designated securities;

(C) Deliver to the person a written statement:

(i) Setting forth the basis on which the dealer and salesman made the determination required by subparagraph (B) of this paragraph;

(ii) Stating in a highlighted format that it is unlawful for the dealer or salesman to effect a transaction in a designated security subject to the provisions of subparagraph (B) of paragraph (1) of this subsection unless the dealer and salesman have received, prior to the transaction, a written agreement to the transaction from the person; and

(iii) Stating in a highlighted format immediately preceding the customer's signature line that:

(I) The dealer and salesman are required by this subsection to provide the person with the written statement; and

(II) The person should not sign and return the written statement to the dealer or salesman if it does not accurately reflect the person's financial situation, investment experience, and investment objectives; and

(D) Obtain from the person a manually signed and dated copy of the written statement required by subparagraph (C) of this paragraph.

(3) The written agreement to the transaction required by subparagraph (B) of paragraph (1) of this subsection shall:

(A) Be signed by the purchaser and dated;

(B) Set forth the identity and quantity of the designated security to be purchased;

(C) Prominently disclose, in close proximity to the signature lines of the agreement, that the purchaser has a right to rescind the agreement, in accordance with paragraph (4) of this subsection;

(D) Disclose all commissions, fees, bonuses, or other compensation payable to the dealer and salesman as a result of the transaction; and

(E) Disclose the price at which the dealer is currently selling or offering to sell the security and the price at which the dealer is currently buying or offering to buy the security.

(4)(A) Any person purchasing a designated security from a designated dealer or designated salesman shall have an unqualified right to rescind the transaction within three business days of receipt of the confirmation of the transaction.

(B) To exercise the right to rescind, the purchaser shall notify the designated dealer in writing and shall send the notice by mail or other means to the designated dealer's place of business by midnight of the third business day following receipt of the confirmation of the transaction.

(C) If the designated dealer does not send a confirmation as required by paragraph (2) of subsection (p) of Code Section 10-5-3, the right to rescind under this subsection shall expire two years after the purchase of securities or upon the purchaser's sale of the security, whichever occurs first.

(D) In a transaction subject to rescission under this paragraph, the designated dealer shall send to the purchaser a written notice of the right to rescind. Such notice shall be included in or accompany the confirmation of the transaction and shall include:

   (i) A disclosure of the purchaser's right to rescind under subparagraphs (A) and (B) of this paragraph;

   (ii) A description of how to exercise the right to rescind; and

   (iii) A form which may be used to effect a rescission and which sets forth the dealer's address to which such form may be delivered.

(5) A designated dealer, or another dealer on behalf of such designated dealer, shall disclose, on each statement of account sent to account holders having a designated security shown as a "long" position in the person's account as of the statement date, the price at which the designated dealer is offering to buy such security or, if no such price is available, the average of the bid prices by other dealers and the date of

EXHIBIT A

the most recent bid available from the designated dealer and the amount of money represented by the long position, if it were to be sold at the bid price shown on the statement.

(6) The requirements of paragraph (1) of this subsection do not apply to:

 (A) Transactions in which the purchaser is an accredited investor of the dealer or salesman;

 (B) Transactions that are not recommended by the dealer or salesman;

 (C) Transactions by a dealer or salesman who is not and has not been a market maker in the designated security that is the subject of the transaction in the immediately preceding 12 months;

 (D) Transactions in which the purchaser is an established customer of the dealer or salesman; or

 (E) Any transaction or transactions that, upon prior written request or upon his own motion, the commissioner conditionally or unconditionally exempts as not encompassed within the purposes of this subsection.

(7) The requirements of paragraph (4) of this subsection do not apply to:

 (A) Transactions in which the purchaser is an accredited investor of the dealer or salesman;

 (B) Transactions that are not recommended by the dealer or salesman;

 (C) Any transaction or transactions that, upon prior written request or upon his own motion, the commissioner conditionally or unconditionally exempts as not encompassed within the purposes of this subsection.

(8) Compliance with SEC Rule 15c2-6 (17 CFR .240.15c2-6, as amended) shall be deemed to be compliance with paragraph (2) of this subsection.

(n) It shall be unlawful for any designated dealer or designated salesman to charge or receive any commission, fee, bonus, markup, or other compensation with respect to a transaction involving the purchase or sale of designated securities which, singly or in combination, exceeds 10 percent of the purchase or sales price of the securities involved in the transaction.

(o) It shall be unlawful for any dealer, limited dealer, salesman, or limited salesman who is participating or otherwise financially interested in the primary or secondary distribution of any security which is not admitted

EXHIBIT A

to trading on a national securities exchange to represent to a customer that any security is being offered to such customer "at the market" or at a price related to the market price unless such dealer, limited dealer, salesman, or limited salesman knows or has reasonable grounds to believe that a market for such security exists other than that made, created, or controlled by him, or by any person for whom he is acting or with whom he is associated in such distribution, or by any person controlled by, controlling, or under common control with him.

(p) It shall be unlawful for any designated dealer to offer or sell in or from the State of Georgia a designated security unless the designated dealer:

(1) At the time of the offer and sale has entered upon a quotation system approved by the commissioner, a firm bid to purchase at least 100 shares of the stock sold at a firm price; and

(2) Actually intends to purchase and, when called upon to do so by any person, actually will purchase at least 100 shares at such price, and does not intend to reduce, and does not reduce below the quoted bid price, the price for which it actually purchases additional shares, except in reasonable response to market or economic circumstances or conditions.

(q) It shall be unlawful for any person to offer for sale or to sell viatical investments in or from this state unless the following requirements are met:

(1) The viatical issuer first files with the commissioner a statement which provides the following information:

(A) A full description of the types of viatical investments to be offered or sold, including without limitation statements as to whether the underlying policies or certificates will be whole, fractionalized, or pooled, whether the underlying policies are currently owned by the viatical issuer or will be acquired in the future, and whether the investors will be sold only policies or certificates owned by the viatical issuer at the time of the investment or will have their investments matched to policies that may be acquired after the date of the investment;

(B) The financial statements of the viatical issuer, prepared in conformity with generally accepted accounting principles;

(C) A list of all dealers, salespersons, and agents authorized by the viatical issuer to sell in this state, together with their securities registration numbers;

(D) A list of all states in which the viatical issuer is licensed to purchase viatical settlement contracts, has an application pending, or has been denied exemption or registration;

(E) A list of all states in which the viatical issuer sells viatical investments pursuant to exemption, is licensed to sell viatical invest-

EXHIBIT A

ments, has an application pending, or has been denied exemption or registration;

(F) A copy of any escrow agreements for the escrow of proceeds or for the escrow of funds for the payment of premiums;

(G) A copy of all advertisements or sales literature and the text of any script to be used in conjunction with the solicitation, offer, or sale of a viatical investment;

(H) A copy of all documents to be used to disclose the risk factors associated with the sale of a viatical investment; and

(I) A copy of all documents to be used to conduct any determination of suitability of a viatical investment to the particular investor.

The viatical issuer shall have an affirmative duty to file with the commissioner a supplemental or amended statement if at any time there is a material change to any of the information provided in the statement;

(2) The viatical issuer files an annual report that shall include such information pertaining to the offer, sale, or status of any viatical investment as the commissioner may by rule require;

(3) In connection with the offer or sale of any viatical investment, the viatical issuer, dealer, salesperson, and agent offering or selling the viatical investment shall not make any projections or representations regarding rates of return of any investment or prospective investment other than a rate of return expressed on an annual basis. Such projection or representation must be based upon a written opinion of life expectancy by a qualified physician;

(4) The viatical issuer, dealer, salesperson, and agent shall, for a minimum of five years after the date of maturity of any policy that is the subject of a viatical investment, retain and provide to the commissioner upon request copies of documents relating to the offer or sale of viatical investments that the commissioner may by rule require and shall make said documents available for inspection by the commissioner upon request; and

(5) Neither the viatical issuer nor any of its officers, directors, partners, 10 percent or greater stockholders, promoters, affiliates, nor the escrow agent nor any selling agent of the viatical investment being offered, nor any officer, director, or partner of the selling agent shall have:

(A) Within the last five years filed a registration statement which is the subject of a currently effective stop order entered by any state securities administrator or the United States Securities and Exchange Commission;

EXHIBIT A

# OFFICIAL CODE OF GEORGIA ANNOTATED

With Provision for Subsequent Pocket Parts

*Prepared by*
The Code Revision Commission
The Office of Legislative Counsel
*and*
The Editorial Staff of LEXIS® Publishing



Library
JUL 1 7 2000
Kilpatrick Stockton LLP
Atlanta

Published Under Authority of the State of Georgia

## Volume 8
### 2000 Edition

Title 10. Commerce and Trade

Including Acts of the 2000 Session of the General Assembly
of Georgia and Annotations taken from the Georgia
Reports through Volume 271, page 811, and
the Georgia Appeals Reports through
Volume 242, page 363

**LEXIS® Publishing**
Charlottesville, Virginia

EXHIBIT A

(Code 1933, § 97-113, enacted by Ga. L. 1973, p. 1202, § 13; Ga. L. 1974, p. 284, § 14; Ga. L. 1986, p. 1559, § 6; Ga. L. 1988, p. 1290, § 7; Ga. L. 1990, p. 1534, §§ 11, 12; Ga. L. 1998, p. 1617, § 8.)

**The 1998 amendment,** effective July 1, 1998, in subsection (a), inserted "or her" in two places and substituted "salesperson" for "salesman" throughout that subsection.

**Law reviews.** — For annual survey of administrative law, see 38 Mercer L. Rev. 17 (1986). For article, "The Civil Jurisdiction of State and Magistrate Courts," see 24 Ga. St. B.J. 29 (1987).

### JUDICIAL DECISIONS

**Editor's notes.** — In light of the similarity of the provisions, decisions under former Ga. L. 1957, p. 134, as amended, have been added to the annotations for this section.

**Under this section it is not essential that criminal proceedings be instituted,** but the commissioner has the right to issue an order to prohibit salesmen from continuing the sale of questionable securities and also to apply for an injunction to restrain such acts and, further, to turn over any evidence to the district attorney, who may institute the necessary criminal proceedings. Cohen v. State, 101 Ga. App. 23, 112 S.E.2d 672 (1960).

**Provisions for initiating criminal proceedings not exclusive.** — This section is permissive in character and provides for a manner of initiating of criminal proceedings through the commissioner and Attorney General, but it is by no means intended to be exclusive, and the fact that the district attorney rather than the Attorney General appears before the grand jury, or that warrants are sworn out in the first instance and prior to the grand jury proceedings by affidavit of the individual prosecutors, in no way renders the indictment illegal. Curtis v. State, 99 Ga. App. 732, 109 S.E.2d 868 (1959).

### RESEARCH REFERENCES

**Am. Jur. 2d.** — 69 Am. Jur. 2d, Securities Regulation — State, §§ 90, 91.

**C.J.S.** — 79A C.J.S., Securities Regulation and Commodity Futures Trading Regulation, §§ 441, 442, 448, et seq.

### 10-5-14. Civil liability from sales of securities.

(a) Any person who violates subsection (a) of Code Section 10-5-12 shall be liable to the person buying such security; and such buyer may sue in any court of competent jurisdiction to recover the consideration paid in cash (or the fair value thereof at the time the consideration was paid if such consideration was not paid in cash) for the security with interest thereon from the date of payment down to the date of repayment as computed in paragraph (1) of subsection (d) of this Code section (less the amount of any income received thereon), together with all taxable court costs and reasonable attorney's fees, upon the tender, where practicable, of the security at any time before the entry of judgment, or for damages if he no longer owns the security. Damages are the amount which equals the difference between the fair value of the consideration the buyer gave for the security and the fair value of the security at the time the buyer disposed of it, plus interest thereon from the date of payment down to the date of repayment as computed in paragraph (2) of subsection (d) of this Code section. A person who offers or sells a security in violation of paragraph (2)

EXHIBIT A

of subsection (a) of Code Section 10-5-12 is not liable under this subsection if:

(1) The purchaser knew of the untrue statement of a material fact or omission of a statement of a material fact; or

(2) The seller did not know and in the exercise of reasonable care could not have known of the untrue statement or misleading omission.

(b) Every contract between a certified public accountant who holds himself out as a "financial planner" or an "investment adviser" and an advisory client or between an investment adviser and an advisory client made in violation of any provision of this chapter and every such contract heretofore or hereafter made, the performance of which involves the violation of or continuance of any relationship or practice in violation of any provision of this chapter or any rule, regulation, or order thereunder, shall be void:

(1) As regards the rights of any person who, in violation of any such provision, rule, regulation, or order shall have made or engaged in the performance of any such contract; and

(2) As regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

The advisory client who is a party to such a contract may sue to recover the consideration paid under such contract to such investment adviser or investment adviser representative, together with interest thereon at the annual rate of 6 percent from the date of payment of the consideration, plus costs and reasonable attorney's fees.

(c) Every person who directly or indirectly controls a person liable under subsection (a), (b), or (h) of this Code section, every general partner, executive officer, or director of such person liable under subsection (a), (b), or (h) of this Code section, every person occupying a similar status or performing similar functions, and every dealer, limited dealer, salesman, or limited salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the person whose liability arises under subsection (a), (b), or (h) of this Code section unless the person whose liability arises under this subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist. There is contribution as in the case of contract among several persons so liable.

(d) With respect to the purchase, sale, or offer to purchase or sell a security, no person may sue under this Code section more than two years from the date of the contract for sale or sale, if there is no contract for sale.

EXHIBIT A

With respect to the purchase, sale, or offer to purchase or sell a security, no person may sue under this Code section:

(1) If the buyer received a written offer, before suit and at a time when he owned the security, to repay in cash or by certified or official bank check, within 30 days from the date of acceptance of such offer in exchange for the securities, the fair value of the consideration paid (determined as of the date such payment was originally paid by the buyer), together with interest on such amount for the period from the date of payment down to the date of repayment, such interest to be computed in case the security consists of an interest-bearing obligation at the same rate as provided in the security or, in case the security consists of other than an interest-bearing obligation, at the rate of 6 percent per annum, less, in every case, the amount of any income received on the security, and:

(A) Such offeree does not accept the offer within 30 days of its receipt; or

(B) If such offer was accepted, the terms thereof were complied with by the offeror; or

(2) If the buyer received a written offer before suit and at a time when he did not own the security to repay in cash or by certified or official bank check, within 30 days from the date of acceptance of such offer, an amount equal to the difference between the fair value of the consideration the buyer gave for the security and the fair value of the security at the time the buyer disposed of it, together with interest on such amount for the period from the date of payment down to the date of repayment, such interest to be computed in case the security consists of an interest-bearing obligation at the same rate as provided in the security or, in case the security consists of other than an interest-bearing obligation, at the rate of 6 percent per annum, less, in every case, the amount of any income received on the security, and:

(A) Such offeree does not accept the offer within 30 days of its receipt; or

(B) If such offer was accepted, the terms thereof were complied with by the offeror,

provided no written offer shall be effective within the meaning of this subsection unless it would be exempt under Code Section 10-5-9 or, if registration would have been required, then unless such rescission offer has been registered and effected under a subsection of Code Section 10-5-5. Any person who is paid for his security in the amount provided by this subsection shall be foreclosed from asserting any remedies under this chapter regardless of whether the other requirements of this subsection have been complied with.

EXHIBIT A

(e) With respect to the activities of a certified public accountant who holds himself out as a "financial planner" or an "investment adviser" or an investment adviser or investment adviser representative, no person may sue under this Code section more than two years from the date of the transaction upon which the suit is based.

(f) Every cause of action under this chapter survives the death of any person who might have been a plaintiff or defendant.

(g) Nothing in this chapter shall limit any statutory or common-law right of any person in any court for any act involving the sale of a security.

(h) Any designated dealer or designated salesman who materially violates Code Section 10-5-4 or 10-5-5 or subsection (a) or (d) of Code Section 10-5-12 with respect to a transaction involving a designated security shall be liable to the person buying such security for:

   (1) The consideration paid in cash (or the fair value of the consideration paid at the time it was paid if such consideration was not paid in cash) for such security with interest thereon from the date of payment to the date of repayment as computed under paragraph (1) of subsection (d) of this Code section, less the amount of any income paid thereon, upon the tender of the security at any time before the entry of judgment;

   (2) An additional amount equal to three times the amount calculated pursuant to paragraph (1) of this subsection; and

   (3) Court costs and reasonable attorney's fees.

(i) The form of action provided by Code Section 9-11-23 may be used in any action brought pursuant to subsection (h) of this Code section, and, in such case, it shall be conclusively presumed that a class of persons numbering ten or more who purchased the same designated security from or through the same designated dealer or designated salesman shall constitute a class so numerous as to make it impracticable to bring them all before the courts. (Code 1933, § 97-114, enacted by Ga. L. 1973, p. 1202, § 15; Ga. L. 1974, p. 284, § 16; Ga. L. 1979, p. 1296, §§ 9, 10; Ga. L. 1986, p. 1559, § 7; Ga. L. 1987, p. 3, § 10; Ga. L. 1988, p. 1290, § 8; Ga. L. 1989, p. 14, § 10; Ga. L. 1990, p. 1332, § 5; Ga. L. 1990, p. 1534, §§ 13, 14.)

**Code Commission notes.** — Pursuant to Code Section 28-9-5, in 1988, the comma near the end of subparagraph (d)(1)(B) was changed to a semicolon.

**Law reviews.** — For article, "Statutes of Limitation: Counterproductive Complexities," see 37 Mercer L. Rev. 1 (1985). For article, "The Civil Jurisdiction of State and Magistrate Courts," see 24 Ga. St. B.J. 29 (1987).

For comment, the purchase of all the shares of stock of a business is not the purchase of a "Security" within the meaning of the Federal Securities Act of 1933 or the Georgia Securities Act of 1973, see 30 Emory L.J. 1212 (1981).

EXHIBIT A